[Crim. No. 319. Department One.—November 23, 1897.]

THE PEOPLE, Respondent, v. JOSIAH LOVREN, Appellant.

CRIMINAL LAW—TRAIN WRECKING—CONSTITUTIONALITY OF STATUTE—TITLE OF ACT—CONSTRUCTION—BOARDING PASSENGER TRAIN WITH INTENT TO ROB THE SAME.—The act of the legislature commonly known as the "train wrecking act," which is designated by title as an act "relating to train wrecking," does not violate the provision of the constitution which declares that every act of the legislature shall embrace but one subject, which shall be expressed in its title, because in the body of the act a person is declared guilty who unlawfully boards a train with intent to rob the same, such provision not being intended to punish train robbery as such, but to prevent train wrecking, and in that respect stands in relation to the title as other provisions of the act.

ID.—"ROBBING PASSENGER TRAIN"—ACT NOT TO BE CONSTRUED AS MEANINGLESS.—The phrase "robbing a passenger train" is not to be construed as meaningless or absurd; and though the act is crude, it is not to be nullified by the courts, it being the purpose of the act to prevent train wrecking. A person is guilty of the offense of "boarding a passenger train with intent to rob the same" when he unlawfully boards a passenger train with the intention to take by force and intimidation the control and management thereof from the employees, and thereupon to commit larceny or robbery thereon.

ID.—EVIDENCE—CONSPIRACY—DECLARATIONS OF CONSPIRATORS —Where the evidence is sufficient to establish a conspiracy between the defendant and other persons to board a passenger train with intent to commit robbery, all statements, acts, and declarations made by the other conspirators, pending the commission of the crime, are competent evidence against the defendant.

Id.—Conspiracy to Rob Northbound Train—Change of Purpose to South-
bound Train—Declaration of Co-conspirator.—Where the conspiracy
disclosed by the evidence originally contemplated the robbery of a
northbound train, and the southbound train upon the same railroad
was the one in fact boarded, it seems that such change in the plans
of the conspirators at the last moment as to the particular train
to be boarded and robbed, even if made without the knowledge of
such change coming to the defendant, or his personal presence at
the commission of the offense, would not demand his acquittal;
but the declaration of a co-conspirator that defendant said, at a
time when it was the intention to attack the southbound train, that
there would be more money upon the southbound than upon the
northbound train, is competent evidence to prove that defendant
was an accessory to the offense committed.

Id.—Expert Evidence—Texture of Cloth.—The question whether or not
two pieces of cloth were of the same texture and quality is a proper
subject for the expert testimony of persons experienced in handling
such cloths.

APPEAL from a judgment of the Superior Court of Tulare
County and from an order denying a new trial. Wheaton A.
Gray, Judge.

The facts are stated in the opinion of the court.

Lillie & Clack, and Hannah & Miller, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy
Attorney General, for Respondent.

GAROUTTE, J.—The defendant has been convicted of vio-
lating an act of the legislature commonly known as the "train
wrecking act." He was charged by the information with un-
lawfully boarding a certain passenger train with intent to rob
said train.

It is claimed that the act is unconstitutional in this, that it
violates that provision of the constitution which declares that
every act of the legislature shall embrace but one subject, which
subject shall be expressed in its title. By its title this act is
designated as an act "relating to train wrecking"; and in the
body of the act we find the provision which declares a party to
be guilty who unlawfully boards a passenger train with intent
to rob the same. The defendant is here charged with violating
this particular provision of the act, and it is now claimed that
such provision bears upon train robbery, and not train wrecking,

and for that reason is objectionable to that portion of the constitution to which reference has been made. The contention has no force. This court has held that every provision of the act directly applies to train wrecking, and that the provision quoted does not apply to train robbery. Indeed, robbery.of a train is not made an element of the offense under any provision of the act, and is in no way material in proving a case upon an information like the one before us. Prior to the passage of this act there was ample law in this state covering all cases of robbery,and no legislation was demanded to that end. This provision of the act was clearly made to prevent train wrecking, and in that respect stands exactly as all other provisions of it. It is said in *People v. Thompson,* 111 Cal. 246, and reaffirmed in *People v. Thompson,* 115 Cal. 160, that: "The whole tenor and purpose of the act is directed against train wrecking, and this is true as to subdivision 2 equally with all other subdivisions. At first glance this clause would seem to be directed toward the suppression of the crime of robbery, but the offense of robbery is only incidentally involved, and the prevention of the wrecking of the train, and the consequent and natural results following, of injury and death to the passengers, is its prime purpose. . . . . Hence we say that every part and clause of the act is directed toward the suppression of train wrecking."

It is further claimed that to charge the defendant with unlawfully boarding a passenger train with intent to rob the same does not charge a public offense, for the reason that the phrase "robbing a passenger train" is meaningless and implies a legal impossibility. The court had occasion to advert to the crudeness of this provision of the act in the case of *People v. Thompson,* 111 Cal. 246. It certainly was the creation of an amateurish legislative hand, yet at the same time courts are required to sustain it if possible. The act in this particular must not be nullified by the courts, if any other course in legal reason can be pursued, and we deem its weaknesses not so bad as to absolutely condemn it. As already suggested, it is aimed at the prevention of train wrecking, and, such being the purpose of the act, it may be said that a person is guilty of the offense charged by this information when he unlawfully boards a passenger train with the intention to take by force and intimidation, the control

and management thereof from the employees, and thereupon to commit larceny or robbery thereon.

In this case the prosecution relied upon a conspiracy between Britt, McCall, Haynes, Ardell, and defendant Lovren. The evidence is amply sufficient to establish such conspiracy. That being the fact, all statements, acts, and declarations made by either of the parties pending the commission of the crime, looking toward its consummation, are competent evidence against each and every conspirator.

During the progress of the trial it became important to determine whether or not two certain pieces of cloth were of the same texture and quality. Expert evidence was introduced upon this question, and we think properly introduced. It was a matter upon which the ordinary juror, if left to his own knowledge, would be very unlikely to form a correct judgment. Persons experienced in dealing in and handling such cloths would be more competent to pass upon the issue presented. It was a matter not coming within the common knowledge and common experience of men, and for that reason witnesses with special experience and special knowledge might well be called upon to give the jurors the benefit of that knowledge and experience in the form of expert evidence.

It is claimed that the conspiracy disclosed by the evidence in this case was one to "rob" the northbound passenger train, and that Lovren, the defendant, not being a present, active participant in the attempt to rob the southbound passenger train, the conspiracy goes for naught, and therefore the evidence fails to establish that he was an accessary to the attempt made. The southbound train was the one boarded, and upon which the attempt to rob was made. We are not prepared to say that the change in the plans of the other conspirators at the last moment as to the particular train which should be boarded and robbed, without the knowledge of such change coming to the defendant, would demand his acquittal. It would certainly be a very small technicality upon which to defeat substantial justice. It may be said that the conspiracy was full ripe before any particular train was agreed upon as the subject of the attack; and the particular train agreed upon by the conspirators, in the eyes of the law, was no more than an atom in the conspiracy. But, aside

from this view of the question, McCall, who was killed in the attempt, told Britt upon the afternoon of the attack that defendant, Lovren, said there would be more money upon the southbound train than upon the northbound train that night. And at the time this statement was made it was clearly the intention of McCall to make the attack upon the southbound train.

The court has examined with care the remaining grounds upon which appellant relies for a new trial of his case. There are many of them, but, after a consideration of them all none are deemed to demand a reversal of the judgment.

For the foregoing reasons the judgment and order are affirmed.

Van Fleet, J., and Harrison, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion thereon on the 23d of December, 1897:

BEATTY, C. J.—I dissent from the order denying a rehearing of this case, because I think the superior court erred in a manner extremely prejudicial to the defendant in admitting over his objection hearsay evidence tending to connect him with the conspiracy. The evidence of Britt and Haynes clearly established the fact that they had entered into a conspiracy with McCall to commit the robbery. Haynes alone gave direct evidence that the defendant had afterward acceded to the conspiracy. But he and Britt were both allowed, against the objection that it was hearsay, to testify to declarations of McCall to the effect that Lovren was aiding and assisting them. The evidence was clearly incompetent. The declarations of a conspirator that some one else is also a conspirator do not come within the rule that one conspirator is bound by acts and declarations of his co-conspirator in furtherance of the objects of the conspiracy. The fact that one is a conspirator must be proved by competent evidence; and hearsay declarations of others are not competent evidence.