[Crim. No. 905.  First Appellate District, Division One.—September 14, 1920.]

THE PEOPLE, Respondent, v. FRANK MAZZURCO, Appellant.

[1] CRIMINAL LAW—RAPE — CREDIBILITY OF PROSECUTRIX — QUESTION FOR JURY.—In a prosecution for the crime of rape, the question of what degree of credibility should be given to the statements of the prosecutrix while on the stand, and the weight to be accorded to her testimony is one addressed solely to the discretion and consideration of the jurors.

[2] ID.—CONSPIRACY—FORCED MARRIAGE—EVIDENCE—DECLARATIONS OF CONSPIRATORS.—Where in such a prosecution the evidence was sufficient to establish the existence of a conspiracy among several persons to force the complaining witness into a marriage with the defendant, and from all that transpired it appeared that the raping was a part of the plan, all statements, acts, and declarations made by any of the parties pending the commission of the crime were competent evidence against each and every conspirator.

[3] ID.—CONVERSATIONS AFTER CRIME—ABSENCE OF DEFENDANT—ADMISSIBILITY.—In such a prosecution, testimony as to conversations had between the prosecutrix and several of the conspirators immediately after the rape was admissible, although the defendant was not present, since it was a question for the jury as to whether the conspiracy had then terminated.

[4] ID.—UNWARRANTED CURTAILMENT OF CROSS-EXAMINATION OF PROSECUTRIX — EVIDENCE — INSUFFICIENT GROUND FOR REVERSAL. — In such a prosecution, it was error to curtail the cross-examination of the prosecuting witness as to why she had not given at a previous trial of one of the other conspirators her present testimony, which more explicitly connected the defendant with the affair, but not a sufficient ground for reversal in view of section 4½ of article VI of the constitution and the evidence establishing the guilt of the defendant.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. J. R. Welch, Judge.  Affirmed.

The facts are stated in the opinion of the court.

W. E. Foley and Foley & King for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

WASTE, P. J.—The appellant was charged with the crime of rape, in that he assisted and abetted one Salvador Ciulla, in the commission of an act of sexual intercourse, accomplished by said Ciulla, with force and violence upon Mary Schiro. He was convicted and from an order denying his motion for a new trial, and from the judgment of conviction and sentence he appeals.

According to the testimony of the prosecutrix, a young Italian woman, early .on the morning of April 7, 1919, while she was proceeding to her work in the city of San Jose,, she was seized and forcibly placed in an automobile by three men, Salvador Ciulla, Sam Mazzurco, and one Carcuffa. She was conveyed to the ranch of appellant some six miles from the scene of the kidnaping. When she arrived at the house she was taken inside by the three men already named, assisted by Mona Mazzurco, Mrs. Frank Mazzurco, and the appellant. She was dragged by these people into a bedroom, where she was left with Ciulla. Once or twice after that all the parties came into the bedroom, and the appellant, together with the others, assisted in forcibly taking off her clothes. She was left with Ciulla, the door being closed and locked from the outside. Ciulla then forcibly committed the acts of sexual intercourse upon her.

[1] The appellant devotes a large portion of his argument to a discussion of the evidence of the complaining witness, which he claims was of a "very weak character." The question of what degree of credibility should be given to the statements of the prosecutrix, while on the stand, and the weight to be accorded to her testimony was one addressed solely to the discretion and consideration of the jurors. (*People* v. *Compton,* 123 Cal. 403, 407, [56 Pac. 44]; *People* v. *Durrant,* 116 Cal. 179, 200, [48 Pac. 75].)

The defendant attempted to establish an alibi, as part of his defense. Three witnesses, one a neighboring land owner and the other two his employees, testified as to seeing the defendant at work in his orchard at various times during the morning upon which the alleged rape was perpetrated. Appellant argues from an analysis of their testimony that it was impossible for him to have been present in the house and to have assisted in the commission of the acts testified to by the complaining witness. But the jurors may have disbelieved the testimony tending to prove an alibi, or, what

is more probable, may have reached the conclusion that,
either the witnesses for the defense may have been mistaken
as to the hours during which they saw the defendant at work
in the orchard, or that possibly he might have absented
himself from his employment long enough to have taken part
in carrying the girl into the house and in removing her
clothes as she testified. (*People* v. *Sears*, 119 Cal. 267, 270,
[51 Pac. 325] ; *People* v. *Shehadey*, 12 Cal. App. 648, 657,
[108 Pac. 146].)

[2] Over the objection of the defendant, the court ad-
mitted the testimony of the prosecutrix, and several other
witnesses, as to what occurred when she was forcibly seized
in San Jose and carried in the automobile to the appellant's
ranch. The defendant was not present and took no part in
the actual kidnaping. He contends, therefore, that the evi-
dence should not have been admitted. Ciulla was madly in
love with the Schiro girl, and sought to marry her. She
rejected his proposal. There is evidence tending to show
that a conspiracy existed on the part of Ciulla, Ciulla's
sister, Mrs. Frank Mazzurco, her husband, Frank Mazzurco,
this defendant and appellant, the latter's brother, Sam
Mazzurco, his wife, Mrs. Sam Mazzurco, and one Carcuffa,
to force, entice, or seduce the complaining witness, Mary
Schiro, into a marriage with Ciulla. From all that tran-
spired it appears that raping the girl, by Ciulla, was un-
doubtedly a part of this plan. It was in pursuance of this
scheme that the girl was kidnaped, on her way to work,
in the city of San Jose, by Ciulla, Sam Mazzurco and Car-
cuffa, and carried in the automobile to the home of this
appellant. There, as testified to by the prosecutrix, she
was forced to undergo the indignities already described, the
appellant taking part in the acts of the ill treatment to
which she was subjected. The evidence as a whole, if be-
lieved, was amply sufficient to establish such conspiracy.
That being the fact, all statements, acts, and declarations
made by any of the parties pending the commission of the
crime, looking toward its consummation, were competent
evidence against each and every conspirator. (*People* v.
*Lovren*, 119 Cal. 88, 91, [51 Pac. 22, 638] ; *People* v. *Holmes*,
118 Cal. 444, 456, [50 Pac. 675] ; *People* v. *Ciulla*, 44 Cal.
App. 719, [187 Pac. 46].)

[3] The court admitted, over the objection of the defendant, testimony of the prosecutrix that after Ciulla had finished the acts of sexual intercourse with her she was allowed by him to leave the bedroom and go into the kitchen of the house. Several of the conspirators were there, and when she cried and asked for her parents she was told that she should now be ashamed to have them see her. Mrs. Mona Mazzurco then had a conversation with the girl, the purport of which was that as Ciulla had accomplished his purpose with her, she was disgraced, no other man would ever care for her, or want to marry her, and she should marry Ciulla. The defendant was not present during these conversations and now contends that the admission of this evidence was error, as being hearsay, not connected with the defendant, and a narration of something that happened after the commission of the rape. Whenever the objective of a conspiracy, in which several persons participate, is at an end, the conspiracy terminated, and the crime has been committed, the admissions of co-conspirators are not admissible against others (*People* v. *Oldham,* 111 Cal. 648, 653, [44 Pac. 312]), but the facts and circumstances here raised a question for the jury to decide as to when the conspiracy, if any there was, terminated, and whether the raping of the prosecutrix by Ciulla was not merely a part of the design, and one advance in the attempt to force her to marry him. (*People* v. *Holmes,* 118 Cal. 444, 459, [50 Pac. 675].) There were apparently three well-defined steps in the method of procedure followed by the defendant and his associates. The first was kidnaping the girl. The second was putting her in Ciulla's embraces. The third, the attempted ingenious consummation of the plan, was to break down the girl's resistance, while she was virtually a prisoner in appellant's house, and laboring under the mental and physical distress caused by the treatment she had undergone, by representing to her that she was forever shamed and disgraced, in the sight of her parents and the whole world, and could only save herself from her humiliation by marrying Ciulla.

The appellant united his own persuasive efforts with those of the other conspirators, after the rape, and following the conversation the girl had with Mona Mazzurco. In his talks with her he tried to impress her with "the chances" she was

throwing away if she rejected Ciulla. He also attempted to force the girl into writing untrue statements, explaining her absence from work, to be delivered to her parents and sister. The further progress of the conspiracy was abruptly terminated by the timely arrival at appellant's ranch of the girl's brother and a deputy sheriff, who rescued the prosecutrix from her pitiful predicament before any further indignities were suffered by her. The testimony as to the conversations immediately after the rape was, therefore, properly admitted.

[4] Appellant complains that the court placed an undue restriction upon his examination of the prosecutrix. It appears that the girl testified upon the preliminary examination and at the trial of Ciulla, who was convicted of two offenses, kidnaping and rape. (*People* v. *Ciulla*, 44 Cal. App. 719, [187 Pac. 46]; 44 Cal. App. 725, [187 Pac. 49].) It was the contention of the appellant that at the trial of this case, on direct examination, she gave testimony more explicitly connecting him with the affair, and testified to matters relating to him, not referred to by her in her testimony at the trial of Ciulla. On cross-examination, and for the purpose of getting before the jury the fact that the girl had not before made these statements, counsel for appellant started to read to her at some length her testimony given upon the Ciulla examination and trial. Upon being checked by the court, counsel then repeated to her various portions of the testimony given on her direct examination at the trial of appellant, and asked her if she so testified at the examination or trial of Ciulla. The court sustained the objection of the district attorney, upon the ground that the questions were incompetent, irrelevant, and immaterial in their nature, and that proper foundation had not been laid, to wit, the production and presentation to the witness of a transcript of her previous testimony, showing she had so testified. For the obvious reason that no such record existed, the appellant could not comply with the court's demand. There was no foundation for this objection and ruling. It was not contended that the witness had so testified. On the contrary, the cross-examination was to the point that she had not, and to elicit the reason why she had not, and an explanation of her present testimony. The questions were not by way of impeachment, but were more to test the credibility of the

witness, and her attitude and fairness toward this defendant. Had the answers been allowed the explanation of the witness might have been full, complete, and satisfactory. She might, for instance, have said that she was not interrogated on the previous occasions upon the subject at all. At most the questions were but preliminary in their nature, and only as the witness answered, and depending upon the character of her answers, might questions by way of direct impeachment have followed. The rulings of the court constituted an unwarranted curtailment of legitimate cross-examination. (*People* v. *Jones,* 160 Cal. 358, 365, [117 Pac. 176]; *People* v. *Hart,* 153 Cal. 261, 266, [94 Pac. 1042].)

Since the convictions in the two cases last cited were set aside and the judgments reversed upon the ground of prejudicial error in unduly restricting cross-examination, section 4½ of article VI of the state constitution has been adopted. That section abrogates the old rule that prejudice is presumed from any error of law. (*People* v. *O'Bryan,* 165 Cal. 55, 65, [130 Pac. 1042].) It is no longer the case that injury is presumed from error; the injury must appear affirmatively to the mind of the court after an examination of the entire cause, including the evidence, or from the nature of the error itself. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal 545, 554, [147 Pac. 238].) Unless from such examination it affirmatively appears that a substantial injury, as well as error, has resulted, the judgment must be sustained. (*People* v. *Merritt,* 18 Cal. App. 58, 65, [122 Pac. 839, 844].) Except in the instances we are now considering, no error encumbers the record in this cause. Except, also, in those particulars, the defendant was granted a very wide latitude in his cross-examination of the complaining witness. In view of the evidence, which we must take into consideration, and which we think was amply sufficient to clearly establish the guilt of the defendant to the satisfaction of the jury, and to warrant the conviction of the defendant, we are unable to perceive how appellant was prejudicially injured by the ruling of the court.

The judgment is affirmed.

Richards, J., and Kinsell, J., *pro tem.,* concurred.