[Civ. No. 5145. Third Appellate District.—November 5, 1934.]

J. A. HANEY, Appellant, v. K. TAKAKURA, Respondent.

Gumpert & Mazerra and C. H. Hogan for Appellant.

Nutter & Rutherford, A. P. Hayne and D. R. Jacobs for Respondent.

PLUMMER, J.—The plaintiff and the defendant in this action were, during the times mentioned herein, neighbors residing near Orosi, in Tulare County, engaged, among other things, in the raising and marketing of oranges. The plaintiff is, and was during all of the time, a man very well informed as to general market conditions, giving considerable attention thereto, and at times making trips to the city of Oakland, where he gained further information as to market conditions.

The record shows that in the month of November, 1932, the defendant had no hand approximately 2,000 boxes of oranges, which he desired to sell and was uncertain as to

whether he should send the oranges to the eastern markets, or attempt to dispose of them in Oakland. Being aware that Mr. Haney was better informed than he on the subject of market conditions, the defendant asked the plaintiff to accompany him to Oakland and aid him in securing the best available market in which to sell his oranges. The plaintiff agreed to accompany the defendant to Oakland, for that purpose, and on the twenty-first day of November, 1932, the plaintiff and the defendant started to Oakland, riding in the defendant's automobile, a Dodge sedan, which during the entire trip was driven by the defendant. The start was made about 3 P. M. Everything went well until the parties reached a place on the highway known as Dublin canyon, a few miles west of the town of Dublin, when the automobile driven by the defendant, while running at a speed of from 30 to 35 miles an hour, ran off the highway on the right side thereof, into an embankment along the edge of the highway and upset, and thereafter caught fire and burned. The accident happened at approximately 8:30 P. M. As a result of the accident the plaintiff was injured, and thereafter brought this action against the defendant for negligence, alleging that the defendant negligently and carelessly allowed the automobile to run off the highway and upset. The answer of the defendant denies the alleged negligence, and sets up the affirmative defense that the plaintiff was riding as a guest of the defendant at the time of the accident.

The judgment went for the defendant, and the plaintiff appeals.

Upon this appeal reliance is had upon the alleged error of the trial court in modifying instructions proposed by the appellant, and also in refusing certain requested instructions. These instructions are all directed to the question of whether the plaintiff was or was not riding as a guest with the defendant at the time of the accident. Both the defendant and the plaintiff testified to the same state of facts relative to the purposes of the trip, the plaintiff testifying that he was requested by the defendant to accompany the defendant to Oakland for the purposes of assisting the defendant in marketing to the best possible advantage the oranges then owned and possessed by the defendant, and which he was desirous of marketing. The defendant like-

wise testified that he had requested the plaintiff to accompany him to Oakland in his, the defendant's, automobile, for the purpose of assisting him, the defendant, in marketing the oranges which he desired to sell. For the reasons hereinafter stated, and the authorities cited, we are satisfied that this state of facts removed the plaintiff from the status of a guest, and that he was riding with the defendant in the defendant's automobile as a passenger rendering compensation.

The last paragraph of section 143¾ of the California Vehicle Act, applicable here, reads: "For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor." As defined in Webster's New International Dictionary, cited in the case of *Crawford* v. *Foster,* 110 Cal. App. 81 [293 Pac. 841], "compensation" is defined as follows: "That which constitutes or is regarded as an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends; remuneration; recompense." The consideration is described as "a benefit conferred or prejudice suffered." (Civ. Code, sec. 1605.) The word "benefit"; as used in the code, in many instances having no technical meaning, we think, here, means "advantage, profit, gain; whatever contributes or promotes prosperity; adds value to property; enhances value". (7 C. J. 1136, 1137.)

The purpose of the trip was to find a market for the 2,000 boxes of oranges; the purpose of the defendant in requesting plaintiff to accompany him in his, the defendant's, automobile, to Oakland, was to market the oranges in the best available market, thereby yielding to the defendant additional value to his property; likewise, promoting to some extent, his prosperity in securing the best price available for his oranges. Likewise, it was the purpose of the plaintiff in accompanying the defendant, at the defendant's request, to assist the defendant in securing added value to his oranges in the way of marketing the same for the highest possible price. That such service is rendering compensation, we think needs only the mere statement to demonstrate its correctness, and comes clearly within the quoted provisions of the California Vehicle Act, *supra.*

In the case of *Crawford* v. *Foster, supra,* the question of whether one riding in an automobile is rendering compensation or is a mere guest, is considered at length. A guest is there described as "one who accepts such hospitality, and who takes a ride either for his own pleasure, or on his own business, without making any return to, or conferring any benefit upon the driver of the car, other than the mere pleasure of his company".

The testimony of both the plaintiff and the defendant in this case shows that such was not the purpose of either the plaintiff or the defendant in causing the plaintiff to accompany the defendant in his automobile on the trip to Oakland.

In the case of *Crawford* v. *Foster, supra,* the facts under consideration showed that the plaintiff was taking a ride in an automobile with an automobile salesman who was demonstrating the car for the purpose of making a sale thereof to the plaintiff, the benefit or compensation in that case being the prospective sale by the defendant to the plaintiff. The benefit which would ultimately accrue to the defendant would be found in the purchase price to be paid by the plaintiff to the defendant. It matters not whether that compensation was direct or indirect. It was the usual, and we might say in most instances, a necessary act to be performed by the defendant or one of his salesmen in order to induce what is called a prospect to become an actual purchaser.

A somewhat similar question was before the court in the case of *Sullivan* v. *Richardson (Defendant) and McCord et al. (Appellants),* 119 Cal. App. 367 [6 Pac. (2d) 567]. The plaintiff in that case was a prospective purchaser of real estate; was taken for a ride in an automobile for the purpose of viewing the property being offered for sale by the defendant. It was contended by the appellant McCord that he was entitled, as a matter of law, from the evidence, to the finding that the plaintiff was a guest. The court found that the appellant was a passenger. The opinion of the court is as follows: "Under the law she could not be held to occupy both relationships of 'guest' and 'passenger' at the same time, and under the same circumstances. To be a passenger does not necessarily imply that there should be payment in money for transportation. (*Champagne* v. *A. Hamburger & Sons,* 169 Cal. 683 [147 Pac. 594].) It may

be by contract, either express or implied, and the contract need not be between the carrier and passenger, but may be between the carrier and a third person for the passenger. (*Orr & Lanning* v. *Boockholdt,* 10 Ala. App. 331 [65 So. 430, 431].) It is enough that there is any consideration for the carriage." (Citing additional cases.) Here, as we have stated, the record shows that there was a consideration for the carriage,—the possible securing by the defendant of a higher price for the oranges that he had to sell, if accompanied by the plaintiff, than the defendant could hope to obtain if he entered the markets unaided by one familiar with market conditions.

In *Sumner* v. *Edmunds,* 130 Cal. App. 770 [21 Pac. (2d) 159], the plaintiff in the action was being driven over a paper route for the purpose of familiarizing himself therewith. No contract of employment had been entered into, but there was such employment in prospect, and it was necessary on the part of the plaintiff to be familiar with the route over which he was to distribute papers when engaging in such employment or occupation. While being driven over the route the plaintiff was injured. The defense that the plaintiff was a guest was interposed in that action and held not well taken. The citations found in the opinion in the Sumner case, *supra,* are too numerous to be set forth herein, but they are all to the effect that there is a distinction between one riding as a mere guest gratuitously for his own pleasure, and where he is conferring some benefit upon the driver or, as we have stated elsewhere herein, adding to the value of the defendant's property or increasing his prosperity.

In the case of *Bookhart* v. *Greenlease-Lied Motor Co.,* 215 Iowa, 8 [244 N. W. 721], a case parallel to that of *Crawford* v. *Foster, supra,* was under consideration by the Supreme Court of Iowa. It was there held that a prospective purchaser injured while being given a demonstration was not a guest, but occupied the position of one rendering compensation.

To the same effect is the case of *Hall* v. *Smith,* 283 Mass. 166 [185 N. E. 850]. The facts are different in this latter case, but the principle held determinative therein is the same.

· In none of the cases which we have cited is it held that what is termed a legal contractual relation should exist between the parties in order to remove the plaintiff from the status as a guest. In the instant case there was no enforceable contract entered into between the plaintiff and the defendant. However, upon the acceptance by the plaintiff of the defendant's request that the plaintiff should accompany him to Oakland for the purpose hereinbefore mentioned, there did arise the implied obligation on the part of the defendant not to endanger the person or life of the plaintiff by any negligent act in driving his automobile.

It is clear from what we have stated that the appellant was entitled to have the jury instructed that if they believed from a preponderance of the evidence that the defendant requested the plaintiff to accompany him to Oakland for the purpose of assisting him in the marketing of the oranges belonging to the defendant, and that the plaintiff accompanied the defendant for such purpose, then and in that case the plaintiff was not a guest of the defendant while riding in the defendant's automobile. This in in substance one of the instructions requested by the plaintiff and refused by the court, on the theory that it had been covered in other instructions. This an examination of the record reveals not to be the case. In the instant case the use of the word "preponderance" would have been unnecessary, as the plaintiff and defendant both testified that the purposes of the trip were for the objects covered in the instruction tendered by the plaintiff. The status of one riding in another's automobile, as to whether he is a guest, or whether he is one riding therein and giving compensation therefor, is a question of law, just as whether, in an action for damages on account of malicious prosecution, the facts of the case enforce the conclusion of law that there was probable cause. (*Ball* v. *Rawles*, 93 Cal. 222 [28 Pac. 937, 27 Am. St. Rep. 174].) The facts are to be found by the jury, and the jury should be instructed that if they have found certain facts, then the conclusion of law would be either that the person so riding was a guest, or one giving compensation, just as we have set ·forth above.

The court gave to the jury the following instructions, the first instruction being at the request of the plaintiff:

"You are instructed that the term 'guest' used in the Motor Vehicle Act of this State, means a person who accepts a ride in any vehicle without giving compensation therefor. You are instructed that the term 'compensation' does not necessarily mean the payment of money or the transfer of property of any description from one person to another. A person who confers any benefit upon another in whose vehicle he accepts a ride *may* thereby pay a compensation for such ride.

"The phrase 'without giving compensation therefor', which I have named as an essential element in the definition of the word 'guest' means a definite benefit to the driver and owner of the car either absolute or contingent, and it does not include such incidental benefits to the driver as come solely from his pleasure in the passenger's company, or acts of courtesy during or after the ride which the passenger might perform for his driver, however valuable to the driver these acts of courtesy might in fact be."

Changing the instructions, however, so that the word "may" which we have italicized was inserted in lieu of the word "does" which appeared in the proffered instruction.

These instructions leave to the jury the determination of the law as to the status occupied by the plaintiff. They might have found the facts just as testified to by both the plaintiff and the defendant, and then come to the conclusion that the services agreed to be performed by the plaintiff did not constitute compensation. Likewise, the term "definite benefit" left to the jury an uncertain field in which to ascertain if under the law a benefit was to be conferred by the plaintiff upon the defendant. Without some definition of the words "definite benefit", as we have shown in our citation of Corpus Juris, *supra*, the jury was left without any definite instruction as to the facts which would establish the relationship of the parties.

These instructions appear to be based upon the language used in the opinion of the court in the case of *Crawford* v. *Foster, supra*. While the language of the learned court in that case is clear and distinct as to the points being decided, we can only say that it is seldom that the language used in an opinion in the decision of a case is appropriate in giving instructions to the jury, for the reason that the jury

has the duty of the finding of facts, and the court has the duty of applying the law.

The court did not err in refusing to instruct the jury as to the negligence of the defendant in falling asleep, as there is no substantial testimony that such was the case.

We are thus faced with the crucial question: Did the error of the court in the matter of instructions to the jury result in a miscarriage of justice?.

If the jury found for the defendant on the theory that the plaintiff was a guest, then there was a miscarriage of justice. On the other hand, if the jury found against the plaintiff on the theory that the defendant was not guilty of negligence, then there was no miscarriage of justice.

Section 4½ of article VI of the Constitution prohibits the granting of a new trial on the ground of misdirection of the jury, unless, after an examination of the entire cause, the appellate court shall be of the opinion that the error complained of has resulted in a miscarriage of.justice. As presented to us we cannot give an affirmative answer to the question of whether there has been a miscarriage of justice. No contention is made upon this appeal that the verdict of the jury should not be sustained, on the theory of its implied finding that the defendant was not guilty of negligence. It is not sufficient that the court is able to say that it cannot be determined whether there has or has not been a miscarriage of justice. For a reversal to be ordered on account of errors committed in the giving or refusing of instructions to the jury, it must affirmatively appear, and the court must affirmatively be of the opinion that there has been a miscarriage of justice.

That the court must be affirmative in its opinion as to there having been a miscarriage of justice, see the case of *Rodetsky* v. *Nerney,* 72 Cal. App. 545 [237 Pac. 791], where it is said: "It is not within our province nor can we from the record weigh the testimony or determine the credibility of witnesses, we not having before us all the facts which appeared to the jury, many of which, due to their nature, cannot be recorded; but we are required to do so to the extent possible. (*Hirshfield* v. *Dana,* 193 Cal. 142 [223 Pac. 451]; *People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042].) Before an appellate court may reverse the judgment of a trial court it must be of the opinion that the error com-

plained of has resulted in a miscarriage of justice. Such may be not be presumed but the result must fairly and reasonably appear from the whole record. For us to say that we cannot determine therefrom that the error complained of did not have that result is not sufficient. Our conclusion in the premises must be an affirmative one. (*People* v. *Chapman*, 55 Cal. App. 192, 201 [203 Pac. 126]; *People* v. *Mazzurco*, 49 Cal. App. 275, 280 [193 Pac. 164]; Const., art. VI, sec. 4½; *People* v. *O'Bryan, supra; People* v. *Roe*, 189 Cal. 548, 561 [209 Pac. 560].)'' See, also, the more recent case of *Etienne* v. *Kendall*, 202 Cal. 251 [259 Pac. 752].

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.