[Civ. No. 18410. Second Dist., Div. One. Oct. 16, 1951.]

MARIE MOISE et al., Respondents, v. FAIRFAX MARKETS, INC. (a Corporation) et al., Defendants; WEST SHORE COMPANY (a Corporation), Appellant.

Cushman, Lynch & Wetherbee and Robert A. Cushman for Appellant.

Knight, Gitelson, Ashton & Hagenbaugh and Van A. Hagenbaugh for Respondents.

WHITE, P. J.—This is an appeal from a judgment in favor of plaintiffs and against appellant, West Shore Company, a corporation, entered upon the verdict of a jury. The action was one to recover damages for personal injuries suffered by plaintiff Marie Moise (hereinafter referred to as plaintiff or "respondent") when she fell in defendant's store at Fairfax Avenue and San Vicente Boulevard in Los Angeles. The sole ground of reversal urged by appellant is that the court committed prejudicial error when it instructed the jury that violation of certain provisions of the Municipal Code of the City of Los Angeles relating to handrails constituted negligence as a matter of law.

Defendant's store, in which plaintiff fell, is a public market, located on a corner. Plaintiff entered the market at its Fairfax Avenue entrance, and visited the meat and bakery displays. After leaving the bakery counter she came into a vacant space ahead of her, which she estimated to be 20 feet, and which space she traversed, keeping near one of the walls of the building. She did not look at any time at the floor of the building ahead of her, but in walking toward the exit, located at the corner of Fairfax and San Vicente, she viewed certain advertisements or exhibits in the window of the store on the Fairfax Avenue side. While thus engaged, in making her way toward the exit, she came to a ramp that she had not noticed, which sloped toward the exit and out to the sidewalk on the corner, the sidewalk at this point being approximately 15 inches below the level of the market floor.

When plaintiff reached the ramp, not having yet noticed it, and approaching it from the side, she fell at a point where there was a vertical drop from the level of the floor to the level of the ramp of perhaps 3 to 6 inches, as near as can be ascertained from the testimony and the photographic exhibits.

It is undisputed that at the time of the accident the lighting in the store was adequate and there were no obstructions to plaintiff's view. She saw the doorway as she walked towards it from the bakery section, but she did not look to see if there were any steps or a ramp, "because I never saw anything like that in any store."

The ramp into which plaintiff fell was 6 feet wide and a little over 9 feet long. Five and one-half feet of its length were inside the market. From the floor level to the outside walk it sloped at a grade of 1.26 feet in 10 feet. The exit doors, as indicated, were 5½ feet from the beginning of the ramp inside the store. The floor of the market on either side of the ramp did not slope to meet the level of the ramp, but was cut off sharply so that the sides of the ramp were vertical.

The trial court instructed the jury that section 91.3309(c) of the Municipal Code of the City of Los Angeles requires that "every ramp having a slope greater than one (1) vertically in ten (10) horizontally shall be provided with handrails as required for stairways." Concededly, the quoted provision of the Municipal Code was applicable to the ramp into which plaintiff fell. The court further instructed the jury that the handrail requirements for an interior stairway between 4 and 8 feet wide were that there should be two handrails, one on each side. The jury was further advised that if it found "that a party to this action violated any provisions of the Municipal Code read to you," then such conduct "constitutes negligence as a matter of law"; but that "a violation of law is of no consequence unless it was a proximate cause of or contributed in some degree as a proximate cause, to an injury found by you to have been suffered by the plaintiff."

Appellant sets forth five points in support of its contention that the giving of the foregoing instructions on the subject of handrails constituted prejudicial error requiring a reversal of the judgment. These points we quote as follows:

"I. The violation of a city ordinance is negligence only · if it had the purposes of preventing the type of accident

complained of and was intended to apply to and protect the class of persons injured in the accident.

"II. The ordinance read to the jury was intended to protect people ascending and descending ramps. Its very terms preclude the construction that it imposes an obligation to install a handrail for the protection of people who approach a plainly visible ramp from the side; in other words, the statute was not designed to prevent people from falling when laterally approaching different floor levels plainly visible.

"III. No statute nor rule of law, nor ordinance, forbids the maintenance of clearly visible differences in floor level. Whether their existence in general is negligence or the failure to see them is contributory negligence, are at best questions of fact for the jury.

"IV. Where it is likely that a verdict might have been different, or where the court cannot say whether a verdict would have been different if an instruction complained of had not been given, there is such prejudice resulting from the instruction that the judgment must be reversed and a new trial had.

"V. Statements of counsel . . . and questions of the jury to the court in the course of deliberations . . . clearly indicate the great probability that the verdict of the jury might have been for the defendant had the instructions complained of not been given."

As an abstract proposition, there can be no question as to the correctness of appellant's first point, that the violation of the ordinance constitutes actionable negligence only if the injured party is one of the class of persons for whose benefit the ordinance was enacted. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 498 [225 P.2d 497].) Further, it will be conceded and assumed for the purposes of this decision, but without so deciding, either expressly or by implication, that the ordinance in question was designed for the protection of persons ascending or descending ramps or stairways, and that respondent does not come within the class of persons the ordinance was designed to protect. So assuming, it still does not follow that prejudicial error resulted from the instructions complained of.

Appellant, under its Point IV, urges that where it is likely that a verdict might have been different, or the court cannot say whether a verdict would have been different had the instructions complained of not been given, the resulting

prejudice requires a reversal and a new trial. The rule in this respect, as stated in article VI, section 4½, of the Constitution of this state, is that a judgment shall not be set aside or a new trial granted, unless, after an examination of the entire cause, including the evidence, the appellate court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. Further, section 475 of the Code of Civil Procedure provides: ". . . No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, *and that a different result would have been probable* if such error, ruling, instruction, or defect had not occurred or existed. *There shall be no presumption that error is prejudicial,* or that injury was done if error is shown." (Italics added.) ▆ A proper statement of the applicable rule is set forth in *Haney* v. *Takakura,* 2 Cal.App.2d 1, 9, 10 [37 P.2d 170, 38 P.2d 160], where the court said:

". . . It is not sufficient that the court is able to say that it cannot be determined whether there has or has not been a miscarriage of justice. For a reversal to be ordered on account of errors committed in the giving or refusing of instructions to the jury, it must affirmatively appear, and the court must affirmatively be of the opinion that there has been a miscarriage of justice.

"That the court must be affirmative in its opinion as to there having been a miscarriage of justice, see the case of *Rodetsky* v. *Nerney,* 72 Cal.App. 545 [237 P. 791], where it is said: '. . . Before an appellate court may reverse the judgment of a trial court it must be of the opinion that the error complained of has resulted in a miscarriage of justice. Such may not be presumed but the result must fairly and reasonably appear from the whole record. For us to say that we cannot determine therefrom that the error complained of did not have that result is not sufficient. Our conclusion in the premises must be an affirmative one. . . .' . . .'"

▆ The exhibits introduced into evidence have been brought here on this appeal, and from an examination of them, and particularly plaintiff's Exhibit 3, it is obvious that the condition of the premises as hereinbefore described was inherently dangerous. Irrespective of the ordinance require-

ments, in our opinion no trier of fact could reasonably find, if not gross negligence, then at least a lack of ordinary care in the failure of the market proprietor to take some measures to warn business invitees of the change in floor level at the sides of the ramp. A conclusion that plaintiff's injuries were not the proximate result of negligence on the part of defendant in failing to provide a suitable barrier or at least a warning would be wholly without support. Appellant urges that no statute or rule of law forbids the maintenance of different floor levels plainly visible, citing among other cases as illustrative of the rule the case of *Garret* v. *W. S. Butterfield Theatres, Inc.*, 261 Mich. 262 [246 N.W. 57], where the court said: "Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it. . . ."

It is appellant's position that whether or not the difference in floor levels "constituted negligence" was a question of fact for the jury, and that a reversal should be ordered because the jury might well have based its verdict upon the failure to provide handrails pursuant to the ordinance rather than upon common-law negligence in leaving the ramp unguarded. The views of this court with respect to the negligence of the market proprietor have been heretofore stated. ■■ With respect to the liability of store proprietors in circumstances similar to those here involved, it is settled that "it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business. . . . The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose. . . . (*Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128].) Although by the verdict of the jury plaintiff herein was exonerated of contributory negligence, nevertheless the language of the court in *Louie* v. *Hagstrom's Food Stores*, 81 Cal.App.2d 601, 610 [184 P.2d 708], is here pertinent: "The exact point now urged by defendant—that the customer is obligated to keep his eyes on the floor—was decided adversely to defendant's contention in *Wills* v. *J. J.*

*Newberry Co.*, 43 Cal.App.2d 595, 601 [111 P.2d 346], where it was stated:

" 'Defendant operated a retail store for the purpose of selling goods to customers. In order to promote sales the goods were displayed on counters to attract the attention of the customers. It should be trite to suggest that a customer could not look at the goods on the counters and at the same time keep his eyes on the floor. Since it was the intention of defendant that its customers should see the goods displayed on the counter, and not have to watch the floor, it should have realized that dangerous substances on the floor would create a dangerous condition and should have acted accordingly.' "

With these rules in mind, and considering the virtually undisputed evidence as to the conditions prevailing at the time the accident happened, this court can conclude only that the verdict of the jury herein finds ample support in the evidence and the error complained of did not result in a miscarriage of justice. The distinction between the facts in the instant cause and the situation where a difference in floor level is indicated by steps and is clearly visible, can only be appreciated by an examination of the photographic exhibits, to which reference has heretofore been made. The floor of the market is of a generally uniform level except at either side of the ramp, where there exists a vertical drop to the level of the ramp. The exit or entrance doors, being only a few inches below the general floor level, provide no warning to a person approaching laterally that a difference in floor level is to be expected. On either side of the ramp a substantial expanse of level floor, of substantially the same coloring and texture as the ramp surface itself, adds to a deceiving appearance. Counters or displays on either side of the ramp are not located so as to guide a customer safely to the ramp entrance, but on the contrary are so located that a customer would ordinarily approach the ramp from the side, as did plaintiff here.

In arriving at the conclusion indicated we have not overlooked the contention that the questions of the jury to the trial court in the course of its deliberations "clearly indicate the great probability" that the verdict might have been for the defendant had the instructions complained of not been given. Aside from the fact, as hereinabove stated, that a verdict for defendant would have been wholly unwarranted, the record discloses that the jury inquired of the court whether a "city inspection" of the ramp would relieve the defendant

of liability. Contrary to appellant's contention, this would seem to indicate only that the jury wished to know whether, despite the dangerous condition, a ''city inspection'' would as a matter of law relieve appellant of liability.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 6, 1951, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1951.