[Civ. No. 7291. First Appellate District, Division Two.—March 21, 1931.]

ENID J. MULLIN, Respondent, v. CHARLES J. ROUS-SEAU et al., Appellants.

P. A. Bergerot, A. P. Dessouslavy and Arthur H. Barendt for Appellants.

Livingston & Livingston for Respondent.

SPENCE, J.—Action for fraud. Upon a trial by jury, judgment upon the verdict was entered in favor of plaintiff and against defendants for the sum of $15,500. The trial court thereafter denied defendants' motion for judgment notwithstanding the verdict and denied defendants' motion to tax plaintiff's costs. Defendants appeal from the judgment and from the orders denying said motions.

This litigation arose out of a transaction in which plaintiff acquired defendants' apartment house in 1927. In her com-

plaint plaintiff alleged misrepresentation of the size of certain apartments, misrepresentation of the income and expenses and a misrepresentation to the effect that the apartments on the lobby floor had been built according to law and had been inspected and approved by the municipal authorities. The apartment house, constructed in 1925, was a wooden structure consisting of three main floors of four apartments each and a lobby floor or ground floor or basement, as it has been variously termed, consisting of a lobby and two apartments. Under the original plans for construction there were no apartments on this lobby floor and the permits for construction and occupancy issued respectively by the Board of Public Works and the Department of Public Health did not contemplate these two apartments. These two apartments were subsequently constructed by appellants and occupied without inspection, approval or permit by the municipal authorities.

This appeal is taken under the alternative method upon a voluminous transcript. To assist in the determination of the questions presented, counsel have filed voluminous briefs, no one of which is less than 200 pages in length and each brief is arranged under approximately 100 headings. Upon reading these briefs we are convinced that much that has been said is not properly before us for consideration on this appeal. However we will attempt in this opinion to discuss briefly each of the main grounds for reversal urged by appellants.

Appellants attack the testimony of respondent and the witness Cunningham (the real estate salesman who handled the transaction) contending that their testimony was preposterous and so thoroughly discredited as to be insufficient to support any finding in respondent's favor. It will be noted that it is not claimed that there was no evidence to support the implied findings. Although the evidence was conflicting there was ample evidence to show that the misrepresentations were made, believed and relied upon. In support of their contention appellants indulge in a lengthy argument on matters bearing upon the credibility of these witnesses and the weight to be attached to their testimony. These matters were all proper for the consideration of the jury upon the trial and of the trial court upon motion for new trial. The same argument was no doubt presented in

the trial court and these matters were determined adversely to appellants. On this appeal we are unable to say that the testimony of these witnesses was so preposterous or so thoroughly discredited as to be insufficient as a matter of law to sustain the implied findings of the jury.

 Appellants further contend that even assuming that the representations relating to the size of the apartments on the east side had been made and relied upon, no cause of action would exist since the matters to which they related were patent and obvious. A discussion of this contention requires some reference to the evidence. Respondent testified in substance that three apartments on the west side of the building were shown to her by appellants but none on the east side, appellant Charles J. Rousseau assuring her that the corresponding apartments on the east side were the same and stating that it was inadvisable to enter them while occupied by tenants on account of the disturbance. Upon this appeal we have the exhibits before us and with the aid of the floor and elevation plans of the building, it appears that the east side apartments were not and could not be the same as the corresponding apartments on the west side. The evidence shows that respondent knew the width of the lot but does not show that any of the plans were exhibited to her prior to the time that the transaction was consummated. It is claimed by appellant that as respondent knew the width of the lot and had an opportunity to view the exterior of the building and the apartments on the west side, the representations concerning the apartments on the east side related to matters which were patent and obvious and would therefore not be actionable. In support of their position appellants cite *Oppenheimer* v. *Clunie,* 142 Cal. 313 [75 Pac. 899]; *Beckley* v. *Archer,* 74 Cal. App. 598 [241 Pac. 422]; 12 Cal. Jur. 756, and other authorities. None of the authorities cited are on all-fours with the present case, but relate to representations concerning matters which were in fact patent and obvious where the falsity of the representations was readily ascertainable. In our opinion these authorities have no application to the facts in the present case. The subject of the representations here was the size of the east side apartments. These apartments were occupied by tenants and were barred from respondent's view by walls and locked doors. In the absence of an in-

spection of these apartments the falsity of these representations could only be determined by respondent by carefully observing all which she had an opportunity to observe and then by correlating all of the facts including the width of the building, its exterior appearance, the size of the apartments on the west side and the number and positions of the various windows and other objects. The facts here more closely parallel those in *Kaston* v. *Zimmerman,* 192 App. Div. 511 [183 N. Y. Supp. 615], and *Whittemore* v. *Wilkins,* 77 Colo. 533 [238 Pac. 69]. If the apartments on the east side had been actually shown to respondent, the situation would be different but respondent was told that it was inadvisable to disturb the tenants in order to make an inspection. Under the circumstances, we are of the opinion that respondent was under no duty to demand entry in order to investigate and was entitled to rely upon the representations made.

The next two contentions of appellants relate to the State Housing Act (Stats. 1923, p. 781) and the representations regarding the lobby floor apartments. Appellants contend that the act permits the use of the basement for living and sleeping purposes in addition to three floors above, while respondent contends that the act prohibits a wooden building with more than three stories for such purposes. The conflicting contentions are based upon counsels' interpretations of sections 12 and 27 of the act (pages 794, 801). In our opinion section 12 clearly limits the use of wooden buildings for living or sleeping purposes where it provides, "No wooden apartment house or hotel hereafter erected shall exceed three stories for living or sleeping purposes at any point . . . " Section 27, which relates to buildings generally, provides, "and no room in a basement of an apartment house or hotel shall hereafter be constructed, altered, or occupied for living or sleeping purposes, unless such room conforms to all of the requirements of this act for rooms in other parts of the building and the ceiling of each such room shall be in all parts not less than seven feet above the adjoining ground level . . . ". We find nothing in section 27 which removes the limitations of section 12 relating to wooden apartment houses and in our opinion respondent's contention must be sustained. It appears that some doubt existed in the minds of the municipal authorities regarding the proper construction of the act.

The health officer testified that as it had never been decided whether the authorities had the right to order such apartments vacated, it had not been their policy or practice to do so in all cases; that if in their opinion the apartments were sanitary and complied with the other provisions of the act relating to air, ventilation, conveniences, etc., it was their practice to permit them to be occupied. It will thus be seen that as a practical matter the question of whether the apartments had passed inspection resulting in the issuance of a permit by the municipal authorities was of primary importance. ■ Appellants take the position that any representation relating to the legality of the lobby floor apartments was one of law and not actionable. As thus stated there appears to be merit in the claim, but under the allegations of the complaint and the evidence the representation complained of was not solely a representation regarding a matter of law. It was alleged in the complaint that appellants represented to respondent ''that said apartment house comprising four floors of apartments, as aforesaid, had been inspected and approved by the municipal authorities· of the City and County of San Francisco and that said four floors of apartments had been built according to law and had been approved as legal by said municipal authorities and that defendants had obtained a building permit to build said apartment house comprising said four floors of apartments, as aforesaid''. These allegations refer both to a representation of a matter of law and also representations as to facts, to wit, inspection, approval and permit by the local authorities. At the request of appellants the trial court instructed the jury that even if they found that appellants made any representations to respondent ''to the effect, substantially, that the apartments on the lobby floor had been built according to law, such an opinion . . . would not justify plaintiff in relying upon it and is not a sufficient basis to support a charge of fraudulent misrepresentations''. It will thus be seen that the court by its instructions properly withdrew from the consideration of the jury the alleged misrepresentations respecting the legality of the apartments and confined them to a consideration of the alleged misrepresentation of fact concerning inspection, approval and permit by the municipal authorities. ■ Continuing, appellants claim that respondent's grievance in respect to the lobby

apartments, if she has any, springs solely from the existence of the statute and not from any actual or threatened interference by the municipal authorities. Under this heading appellants point out that the lobby apartments had not actually been vacated as the result of any action on the part of the municipal authorities. It appears that shortly after the respondent became the owner of the property a "First Notice" was addressed to her by the health officer in May, 1927, stating that the basement apartments were being occupied in violation of law and that the tenants must be given notice to vacate immediately. About one month later in June, 1927, a "Final Notice" was addressed to respondent calling attention to her failure to comply with the previous notice and giving five days' warning of a proceeding against the premises. A third letter followed in July, 1927, directing respondent to appear at the office of the Department of Public Health regarding these apartments and stating that a failure to comply would result in the full penalty of the law. Respondent testified that the health officer thereafter said that he would allow her to operate the apartments until her "troubles were over with Mr. Rousseau". The records of the department show an entry in August, 1927, as follows: "Two gas stoves (in basement apartment) not vented to outside. Conceded by health officer owing to fact that original builder and owner sold as is to new owner. Issue permit." Two further entries appear, one in April, 1928, reading: "Four-story frame—no permit"; and another April, 1929, reading: "Case in court. No permit". The only permit issued was one dated January, 1929, which by its terms expired April 8, 1929, prior to the second trial of the case. The health officer testified that this permit had apparently come back into his possession through being sent to the wrong address. He further stated that an inspection was made in April, 1929, and at the time of the second trial he had not ruled upon the inspector's report on account of the case being in court. It thus appears that no permit relating to the apartments in question was issued until almost two years after the consummation of the transaction and that this permit was issued only for a period of approximately three months. The question of whether good faith surrounded the belated issuance of this permit which had ex-

pired at time of the trial has been raised by respondent but we deem it unnecessary to consider this matter. Under the circumstances existing, we believe that respondent's grievance resulted from the misrepresentations regarding approval and permit of the municipal authorities and not solely from the existence of the statute. The municipal authorities were in doubt regarding the construction to be placed on the act. They issued permits in some cases and not in others, depending upon whether in their opinion the basement apartments were sanitary and complied with the other requirements of the act. If the apartments had been originally built and occupied with full approval of the authorities evidenced by permits from the Board of Public Works and the Department of Public Health, then, no doubt as testified by the witnesses, they would have had greater value in the eyes of a prospective purchaser than apartments built and occupied without any permit whatsoever. With such approval and permits, the question of whether in the opinion of the authorities the apartments were sanitary and complied with the other provisions of the act would have been settled and would have set at rest the uncertainty which existed in this regard. The threatened interference which followed would have been avoided. Without such approval and permits, these questions remained undetermined, threatened ·interference followed, and the value of the apartment house was thereby lessened.

It is further contended by appellants that there never was any agreement of sale or exchange between appellants and respondent and that it was therefore error to instruct the jury that the measure of damages was the difference between the actual value of the property and the value of said property had it been as represented. The general rule relating to the measure of damages in such cases is discussed in the case of *Hines* v. *Brode*, 168 Cal. 507 [143 Pac. 729], but appellants contend that such measure of damages is not applicable where there is no agreement of sale or exchange between the parties, citing *Macdonald* v. *Roeth*, 179 Cal. 194 [176 Pac. 38]. In neither of the cases above mentioned are the facts similar to those in the present case. Here the parties inspected the respective apartment houses involved and respondent believed that she was ex-

changing her apartment house for that of appellant. In the transaction respondent actually conveyed her apartment house to appellants and the latter conveyed the apartment house in question to respondent. It is true that there was no written agreement of sale or exchange signed by respondent and appellants but it is stated by appellants that the transaction was "tripartite". The evidence shows that R. A. Wilson, through his salesman, Cunningham, was the real estate broker who brought the parties together. Wilson obtained from respondent a written authorization to exchange her apartment house for the apartment house of the appellants upon certain specified terms. He also obtained from appellants a written authorization to sell the apartment house in question upon certain specified terms. Appellants apparently desired to sell rather than exchange and without the knowedge of respondent, the transaction was consummated in the following manner: Wilson gave written instructions to the title company which read in part, "This agreement is in conformity with that certain agreement of exchange entered into by Mrs. Grippen, conveying the southwest corner of Gough and Bay street, City and County of San Francisco, State of California, which Mr. Rousseau is to accept in exchange, but in lieu thereof reconvey to R. A. Wilson Co., or nominee, for the above stipulated consideration, namely, $26,200.00 cash, and first mortgage of $35,000 upon the Clay street property." Below Wilson's signature appears the following signed by appellant Charles J. Rousseau, "I hereby agree to convey the Clay street property on or before April 1, 1927, in accordance with the terms stipulated above". In our opinion it is not necessary in order to sustain an action for fraud in the sale or exchange of real property that there should have been an enforceable written contract between parties prior to the completion of the deal and we are further of the opinion that under the facts before us the rule governing the measure of damages is the same as in the ordinary case involving an agreement between two parties for the sale or exchange of property, to wit, the difference between the actual value of the property and the value of the property had it been as represented. (*Hines* v. *Brode, supra.*) The agreement, undisclosed to respondent, by which it was provided that respondent's property would be accepted in exchange

and conveyed to Wilson for a money consideration does not alter the situation. Appellants were not strangers to the transaction as was the case in *Macdonald* v. *Roeth, supra.* It was their property with which they were dealing and concerning which the representations were made and it was respondent's property which they received in exchange to deal with as they saw fit.

Further, the contention is made that the evidence is insufficient to justify the finding that respondent was damaged in the sum of $15,500. Several experts were called by both sides and a great deal of conflicting evidence was introduced on the issue of damage. The various elements affecting value were inquired into at length on examination and cross-examination of the various witnesses of the parties. Applying the rule of damages applicable to the present case and hereinabove discussed, we find ample evidence in the record to sustain the award. In this connection appellants further complain that prejudicial error was committed in admitting certain testimony of witnesses called as experts by respondent. We have examined the several assignments of error made by appellants and find no prejudicial error in the admission of the testimony complained of.

It is also claimed that the court erred in giving and refusing various instructions. The alleged error in many instances involves the questions hereinbefore considered. We have examined the entire charge to the jury and believe that it fully presented the issues and the law applicable thereto and are convinced that no prejudicial error was committed.

We find no merit in appellants' contention relating to alleged prejudicial misconduct on the part of the respondent's counsel based upon a statement made during the opening argument to the jury. A card purporting to contain certain listing information and the date of his first visit to appellants' apartments was produced by the witness Cunningham when called and examined by David Livingston, one of respondent's counsel, on rebuttal in the second trial. The witness stated that after his first visit he had made an office record of listing information which was thereafter transcribed on a card showing the date of such receipt. This card had not been previously produced on the first or second trial although the witness had been requested to

search for the pencil notes of the information which he stated Mr. Rousseau had verbally given him on the first visit. He testified that he had made search and that the original pencil notes could not be found. Appellants endeavored to throw suspicion about the production of this card. In his opening argument to the jury, Lawrence Livingston, also counsel for respondent, stated to the jury that on May 23, or 24, 1929, he and the witness Cunningham had gone into the basement of R. A. Wilson Company and had there found this card. Appellants' counsel objected to this statement and pointed out that there was no testimony that counsel had been with the witness at the time the witness claimed to have found the card. It appears from the affidavits presented on motion for new trial that Lawrence Livingston had not been in the courtroom at the time the witness testified in rebuttal; that the statement made by him in his argument was made in good faith; that David Livingston, who had examined the witness, immediately upon objection stated that there was no testimony in the record to the effect that that counsel had accompanied the witness; that Lawrence Livingston then withdrew his remark and that no request was made for any special admonition to the jury regarding this matter. In the general charge to the jury and previously during the trial, the court instructed the jury that statements of the counsel were not evidence in the case. Assuming without deciding that the making of such statement during the argument would constitute misconduct it does not appear to be prejudicial nor does it appear that the effect thereof would not have been entirely cured by admonition of the court, if such admonition had been requested. In any event this entire matter was presented to the trial court on motion for new trial. By denying the motion the trial court must be deemed to have concluded that no prejudice resulted, and this conclusion should not be disturbed unless under all the circumstances it is plainly wrong. (*La Fargue* v. *United Railways,* 183 Cal. 720 [192 Pac. 538].)

It is further urged that the trial court erred in denying appellants' motion to tax costs. By this motion appellants sought among other things to eliminate the costs of the first trial amounting to $355.50. Upon first trial "the

court ordered the jury discharged on account of misconduct of counsel for plaintiff and costs of trial charged to plaintiff and cause ordered off calendar''. It is conceded that ordinarily the prevailing party is entitled to recover the costs of a previous trial, but it is contended that the rule should be otherwise where a mistrial has resulted from misconduct of counsel for the prevailing party and where the trial court imposes costs upon the prevailing party by way of penalty. We believe this contention must be sustained. Although the order made upon the first trial was not an order from which an appeal might have been taken, it was subject to review upon an appeal from the judgment. (Code Civ. Proc., secs. 956, 963.) In our opinion it was not proper for the trial court to review the prior order upon the motion to tax costs and to allow the prevailing party as costs ''necessarily incurred'' (Code Civ. Proc., sec. 1033), the costs of the first trial theretofore imposed as a penalty.

In conclusion we may state that the evidence in this case was sharply conflicting on practically all of the material issues. We have been at pains to carefully review the proceedings upon the trial and in our opinion there was ample evidence to sustain a verdict for either side. The claims of the respective parties were ably presented in a protracted and bitterly contested trial. The issues have been determined adversely to appellants by the triers of the facts and it is not unusual that they should bend every effort to have the cause tried anew. These considerations, however, are insufficient to justify this court in setting aside the conclusions of the jury and of the trial court on the issues of fact. We have examined the record and the various grounds urged for a reversal, but for the reasons hereinbefore set forth, we believe that with a modification of the judgment relating to the amount taxed as costs, the judgment and orders appealed from should be affirmed.

The judgment is modified by deducting the sum of $355.50 from the amount taxed as costs and as so modified, the judgment and orders appealed from are and each of them is affirmed, the parties to bear their respective costs on this appeal.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 20, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1931.