[Civ. No. 2582. Fourth Appellate District.—March 21, 1941.]

JESSIE WILLS, Respondent, v. J. J. NEWBERRY COMPANY (a Corporation), Appellant.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellant.

Barcroft & Barcroft, David E. Peckinpah and L. N. Barber for Respondent.

MARKS, J.—Plaintiff recovered judgment against J. J. Newberry Company for damages which she suffered as a result of slipping on some vomitus on the floor of an aisle in defendant's store on December 23, 1938. Blanche Mason, floor lady employed by defendant, and C. H. Landgraf, manager of the store, were made co-defendants with their employer. The action was dismissed as to Landgraf and the jury returned a verdict in favor of Mrs. Mason, leaving the corporation as the only appellant. We will hereafter refer to the J. J. Newberry Company as the defendant.

Defendant urges the several following grounds for a reversal of the judgment:

(1) That there is no evidence of negligence because, (a) there is a lack of evidence showing that defendant had any actual knowledge of the vomitus on the floor or that it had remained there for a sufficient time to allow its discovery if reasonable diligence had been used, and, (b) that the vomitus and the danger from it were just as apparent to plaintiff as to anyone else and that a storekeeper is not liable for injury to an invitee resulting from a patent danger or defect.

(2) That the verdict absolving Mrs. Mason from liability is so inconsistent with the verdict against her employer that the latter cannot stand.

(3) Erroneous instructions given, and refusal of proper instructions requested by defendant.

(4) Misconduct of counsel for plaintiff.

The evidence is sharply conflicting. As those conflicts were resolved against defendant by the verdict of the jury, and again by the trial judge in denying the motion for new trial, we will only detail the evidence tending to support the verdict and judgment.

Plaintiff and her daughter entered the defendant's store to have lunch and to do some shopping. After they had

lunched they separated, agreeing to meet at the front door after they had completed their shopping. The store was crowded with shoppers and the sales girls were busy waiting on them. The sales girls had all been instructed to keep the floor of the store free from any foreign substance at all times, making it as safe as possible for the public to walk over, to remove, or report, or have removed any substance that might endanger the public.

Defendant concedes that the record indicates that shortly before the accident a small boy had vomited in one of the main aisles near a cross aisle. There were several sales girls on duty in the immediate vicinity of the vomitus.

Florence Lazarus, in walking down the aisle slipped on the vomitus and fell to the floor. Several sales girls saw that she had fallen and pressed buzzers to give the alarm and call those in authority. They did nothing more to protect any customer against a similar fall. It is not shown that any sales girl had actual knowledge of the vomitus on the floor which caused Miss Lazarus to slip and fall.

Four or five minutes after Miss Lazarus had fallen, plaintiff, in walking down the aisle, slipped in the vomitus and fell, causing the injuries for which she recovered judgment. It is admitted that just before she fell she was looking around the store to discover her daughter and was not looking at the floor. The vomitus was in plain sight and had she looked at the floor she could have seen it.

A storekeeper is not an insurer of the safety of an invitee who enters his premises. He is not to be held responsible for the act of another using his premises in a manner not intended or contemplated unless he had actual knowledge of the condition created by the other person or unless it had existed for such a period that he should be charged with knowledge of it and, by the use of ordinary care which should have been used by a reasonably prudent person, he should have discovered such condition and should have guarded against injury resulting from it. (*Crawford* v. *Pacific States Sav. & Loan Co.*, 22 Cal. App. (2d) 448 [71 Pac. (2d) 333]; *Gold* v. *Arizona Realty etc. Co.*, 12 Cal. App. (2d) 676 [55 Pac. (2d) 1254].) ▪ Generally, he is not liable for injury resulting from a patent and obvious danger which the injured person should have seen and avoided. (*Touhy* v. *Owl Drug Co.*, 6 Cal. App. (2d) 64

[44 Pac. (2d) 405] ; *Clyde* v. *Mitchell,* 14 Cal. App. (2d) 365 [58 Pac. (2d) 205] ; *Shanley* v. *American Olive Co.,* 185 Cal. 552 [197 Pac. 793] ; *Goldstein* v. *Healy,* 187 Cal. 206 [201 Pac. 462].)

We may assume the soundness of defendant's argument that it had no actual knowledge of the vomitus on the floor of the aisle. On the other hand, several of the sales girls who were charged with the duty of keeping the floor of the aisles free from any foreign substances and of making it as safe as possible for the public to walk upon, and of reporting or removing any substances that might endanger the public, saw Miss Lazarus slip and fall. That they realized this was an unusual occurrence that indicated a condition that required immediate attention is evidenced by the fact that several of them sounded their alarm buzzers. They did nothing more during the four or five minutes elapsing until plaintiff slipped and fell in the same vomitus that had caused Miss Lazarus to fall. The fall of Miss Lazarus was a warning of an unusual and dangerous condition in the aisle, for ordinarily young women do not fall while walking over a clean, dry, smooth floor. Therefore, the jury was justified in concluding that defendant had notice of a dangerous condition in the aisle at least four minutes before plaintiff was injured. Several of its employees were in the immediate vicinity and were expressly charged with the duty of "making it (the aisle) as safe as possible for the public to walk through". Having had notice of the condition and being charged with such duty it would seem that one of them might have gone to the place of the accident as soon as Miss Lazarus fell and directed the patrons of the store around the vomitus until it could have been removed, thus preventing another from falling.

In *Tuttle* v. *Crawford,* 8 Cal. (2d) 126 [63 Pac. (2d) 1128], it was said: "Whether the floor of a store or public market place was so negligently maintained as to render the person responsible for its condition liable in damages is a question of fact to be decided by the jury. The same rule is also applicable to contributory negligence. . . . That it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business must be conceded. The fact that the attention of persons who visit public markets is attracted by the display

of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose.''

It was held in *Rothschild* v. *Fourth & Market St. Realty Co.*, 139 Cal. App. 625 [34 Pac. (2d) 734], that ''the question whether the condition which caused the injury had existed so long as to be discoverable by the defendant within a reasonable time is one for the jury (citing cases) and where there is testimony as to the conditions previous to the accident by persons who had slipped on the same floor such testimony is evidence tending to show notice to the defendant of the dangerous condition''. (See, also, *Stoddard* v. *Roberts Public Markets, Inc.*, 27 Cal. App. (2d) 166 [80 Pac. (2d) 519].)

Defendant operated a retail store for the purpose of selling goods to customers. In order to promote sales the goods were displayed on counters to attract the attention of the customers. It should be trite to suggest that a customer could not look at the goods on the counters and at the same time keep his eyes on the floor. Since it was the intention of defendant that its customers should see the goods displayed on the counters, and not have to watch the floor, it should have realized that dangerous substances on the floor would create a dangerous condition and should have acted accordingly. (See *Tuttle* v. *Crawford, supra*; *Stoddard* v. *Roberts Public Markets, Inc., supra.*)

This also bears on the question next argued by defendant, that as the vomitus which caused the dangerous condition was in plain sight, plaintiff should have seen it and should have avoided it. Plaintiff admitted that she was not looking at the floor before she fell but was looking around the store for her daughter. This was not an unreasonable thing for her to do under the circumstances. Defendant cites many cases, some of them involving collisions with railroad trains and motor vehicles, and others falling down open stairs (*Blodgett* v. *B. H. Dyas Co.*, 4 Cal. (2d) 511 [50 Pac. (2d) 801]) where it has been held that it is the duty of a plaintiff to see that which was in plain sight and to avoid the danger. In *Tuttle* v. *Crawford, supra,* these cases have been distinguished from a case, such as we have here, where the at-

tention of a patron may be attracted by goods on display or by the transactions she had in mind.

All these questions have been held to be of fact for the jury. The jury here having resolved all of them against defendant we cannot disturb its finding.

■ Little need be said concerning the claim that the verdict in favor of Blanche Mason is so inconsistent with the verdict against defendant that it cannot be permitted to stand. This rule has been invoked where the negligence of the employee is the sole and primary cause of the injury because he alone committed the negligent act. In such a case the liability of the employer is secondary and he is held accountable solely because of his employee's wrong. Under such circumstances the verdict in favor of the employee is inconsistent with the verdict against the employer. (See *Bradley* v. *Rosenthal*, 154 Cal. 420 [97 Pac. 875, 129 Am. St. Rep. 171].) Here it was brought out in the evidence offered by defendant that Mrs. Mason was not the only employee charged with the duty of keeping the floor clear and free from obstructions. According to her testimony there were about 160 sales girls charged with the same duty. The jury might have concluded that one or more of the sales girls and not Mrs. Mason breached this duty. Under these facts there was no inconsistency in the verdict, as the primary cause of the injury was not necessarily the negligence of Mrs. Mason but might have been the negligence of another employee. It was not necessary to join such negligent employee as a defendant as the action may be maintained against either the employer or the employee or against both.

■ Defendant argues that the trial court committed prejudicial error in instructing the jury at the request of plaintiff that defendant was "bound to exercise reasonable care and vigilance to discover any dangerous condition . . . "

It may be conceded that the use of the word "vigilance" might have been an unfortunate choice. The paragraph containing the quoted phrase was preceded by a paragraph in which the jury was properly instructed that it was the duty of defendant "to use ordinary care to keep his premises in a safe condition" and "to exercise ordinary care and prudence to keep the aisles and passageways . . . in a reasonably safe condition so as not unnecessarily to expose the

customer to danger or accident". Immediately following the challenged instruction the trial court gave the following:

"The proprietor of a store is not an insurer of the safety of its patrons. Such store proprietor is not liable for the unknown acts of negligence of an invitee, which, without knowledge on the part of the store proprietor, caused injuries to others. If you shall find in this case that the plaintiff slipped and fell, by reason of the fact that another customer of the store vomited on the floor, you must bring in a verdict in favor of the defendant, J. J. Newberry Co., unless you shall further find, by the greater weight of the evidence, that said defendant knew, or, in the exercise of reasonable care, should have known, of the dangerous condition of the floor, caused by said vomiting, for a sufficient length of time before the happening of said accident to have enabled said defendant in the exercise of due care, to have removed such dangerous condition, or to have given warning thereof to other customers of the store."

The words "care" and "vigilance" were qualified by the word "reasonable". As they were so qualified we cannot conclude that the use of the one word "vigilance" could have misled the jury, especially in view of the fact that other instructions went into considerable detail in correctly defining the duty of defendant under the facts of this case.

■ Defendant complains because the trial court refused to give an instruction proposed by it which placed the duty on plaintiff of looking where she was going and of seeing that which was in plain sight; that if she failed to do so she was guilty of negligence. The giving of such an instruction was approved in *Jones* v. *Bridges,* 38 Cal. App. (2d) 341 [101 Pac. (2d) 91].

The trial court gave the following instruction on the same subject:

"You are instructed that it is as much negligence to fail to see that which can be observed by the exercise of ordinary care, as it is negligence not to look at all. If you find from a preponderance of the evidence that plaintiff, Jessie Wills, was injured as the proximate result of a dangerous condition of the floor, but that a reasonably careful person, in the position that Jessie Wills was in, would have observed the condition of the floor, and, by reason of such observation, would not have been injured, then the Court instructs you that she

was guilty of contributory negligence and the plaintiff is not entitled to recover in this action."

This instruction covered the same subject as did the refused instruction. The trial judge was not required to give an additional instruction on that subject.

█ Defendant has assigned misconduct of counsel for plaintiff in several particulars and urges that it was "inflammatory and prejudicial" and sufficient ground for reversal of the judgment. It must be admitted that counsel at least approached the extreme limit of propriety on more than one occasion. Whether or not their conduct furnishes ground for reversal remains for consideration.

The first instance of purported misconduct occurred during the direct examination of Roberta Wills, the daughter of plaintiff. After the accident she went to the office of the manager to see him. She was permitted, over the objection of defendant, to relate what happened there. She testified that through a window with bars in front of it she saw two girls counting money; that the manager approached and said, "Can't you see you are disturbing those girls that are counting this money?"; that he closed the door; that she pounded on the door and that when the manager opened it, she said: "If my mother dies you won't have to count that money", . . . "Why won't you please call a doctor?" It is admitted that a doctor was called. Defendant moved to strike this evidence. The motion was denied on the promise that it 'would be connected up. Later this evidence was stricken out by the trial judge on his own motion and the jury was instructed to disregard it.

Defendant urges that this evidence could have had no other effect than to prejudice the minds of the jurors by depicting it as a rich but heartless corporation that was only interested in its monetary· gains.

That this evidence had no bearing on the liability of any of the then defendants, including the manager, goes without saying. It was misconduct to offer it as its immateriality was apparent and there was no attempt to connect it up. The trial judge should have granted the first motion to strike it from the record and should have immediately instructed the jury to disregard it. We fail to see how it could have been connected up or made material, even though the manager was then a defendant.

■ Defendant complains of the following portion of the opening argument of one of plaintiff's counsel: "And we want to say this of Mrs. Wills, that she told you candidly, here some years ago, owing to some little family difficulty or some inability upon the part of her husband to carry on, she took care of things, and Mrs. Wills didn't have any Hollywood instinct about her. She did not cast off her old husband and throw him out in the street, but she kept him and took charge of the affairs of the ranch, because he was still her husband and the father of her children, and she was working to keep from going on relief like so many people are going on relief these days; and little would it matter to the Newberry Company if she did, with her husband—". The trial court granted the motion to strike this portion of the argument and instructed the jury to disregard it.

Defendant urges that this argument stressed the poverty of plaintiff. An argument must relate to the evidence in the case and be measured by it. The evidence does not show plaintiff to be poverty stricken. She managed a 3,500 acre farm on which was grown annually about 1700 acres of grain and between 250 and 400 hogs; also there were about 35 head of cattle. With this evidence in the record the argument did not suggest poverty but was directed more to the fine character of plaintiff and her devotion to her family. Under these facts there was no such error in it that could not have been cured by the order striking it from the record and the instruction to disregard it.

■ During the closing argument of counsel for plaintiff the following occurred:

"Doesn't it strike you as strange, with the experience that Newberry's must have, by the coaching of people who go to school for those things, who must have one experience after another, isn't it strange that just one name of a disinterested person wasn't gotten, and was not brought here by them to tell you what their employees told you? Isn't it strange? There they were, they were not hurt, they did not have an hysterical daughter that thought her mother might die. They were not concerned in that way. Couldn't they have gotten one person? The store was crowded. From their own lips they say the store was loaded, the aisles were crowded; and yet, out of all the people that were there they did not bring one person here that wasn't on the payroll of J. J. Newberry

Company. I wonder why? I wonder if it isn't because those people would have testified to corroborate Mrs. Hyatt and these other witnesses? I wonder if there isn't something to that? Certainly there were other witnesses. Mrs. Wills didn't know enough to get them. She wasn't well enough to get them. Roberta Wills was too concerned about her mother, so they could not get them. But you can bet your bottom dollar that J. J. Newberry Company got them, and they are not here. MR. CONLEY: (Interrupting) Now, just a moment. We object to that statement of counsel and assign it as prejudicial misconduct, based upon nothing whatsoever in the record; and we ask the court to instruct the jury to disregard it. MR. PECKINPAH: I'll consent to that. It is an inference, your Honor. THE COURT: What did you say? MR. PECKINPAH: I'll consent— THE COURT: It is only, of course, an inference, and Mr. Peckinpah is arguing it as an inference; and the jury, of course, must take into consideration that argument of counsel is not evidence, and it is argument here to assist the jury in interpreting the facts, but cannot be considered as evidence.''

Defendant now argues that it was wrongfully accused of wilfully suppressing evidence favorable to plaintiff (sec. 1963, subd. 5, Code Civ. Proc.), which charge, if wrongfully made, has been held reversible error. (*Keena* v. *United Railroads,* 197 Cal. 148 [239 Pac. 1061]; *Weaver* v. *Shell Co. of California,* 13 Cal. App. (2d) 643 [57 Pac. (2d) 571].) The argument of counsel for defendant did not go to the point of charging the deliberate suppression of evidence of a known witness whose testimony would have been favorable to the other party, which was held reversible in the two cases cited. (See *Rogers* v. *Foppiano,* 23 Cal. App. (2d) 87 [72 Pac. (2d) 239].) If we concede that the argument should not have been made, we are confronted with the concession of plaintiff's counsel, and the ruling of the trial judge, which considerably limited the effect of the argument. If counsel for defendant had desired any further ruling from the trial judge they should have requested it. They did not make any further request.

Defendant also complains of other intemperate remarks made by counsel for plaintiff during the closing argument. None of these other remarks were assigned as error and no request was made for an instruction to the jury to dis-

regard any of them so they cannot be controlling here as they were not so prejudicial that they could not have been cured by an instruction to disregard them. (*Scott* v. *Times-Mirror Co.*, 181 Cal. 345 [184 Pac. 672, 12 A. L. R. 1007]; *Mohn* v. *Tingley*, 191 Cal. 470 [217 Pac. 733].) These remarks include reference to an insurance adjuster who was produced as a witness by defendant to impeach the evidence of witnesses for plaintiff. The question of insurance was first injected into the case by defendant, not by plaintiff.

 Certain well established general rules have an important bearing on the acts of misconduct complained of. Generally speaking, we must conclude that the jury obeyed the instructions of the trial judge to disregard evidence and remarks of counsel where such instructions were given. (*Borland* v. *Key System Transit Co.*, 205 Cal. 153 [270 Pac. 194]; *Baker* v. *Market Street Ry. Co.*, 123 Cal. App. 688 [11 Pac. (2d) 912].) Where remarks of counsel are not assigned as error and where no request is made for an instruction to disregard them, usually the error, if any, cannot be urged on appeal. (*Anderson* v. *United Stages*, 192 Cal. 250 [219 Pac. 748]; *Aydlott* v. *Key System Transit Co.*, 104 Cal. App. 621 [286 Pac. 456]; *Ballard* v. *Krug*, 111 Cal. App. 555 [295 Pac. 871]; *Imlay* v. *California Cab Co.*, 124 Cal. App. 68 [11 Pac. (2d) 1116]; *Rogers* v. *Foppiano, supra*; *Estate of Albertson*, 31 Cal. App. (2d) 211 [87 Pac. (2d) 883].)

 There is another rule which has become well established that has an important bearing on whether or not we must regard the misconduct as prejudicial and a ground for reversal of the judgment. It is thus restated by the Supreme Court in *Mudrick* v. *Market Street Ry. Co.*, 11 Cal. (2d) 724 [81 Pac. (2d) 950, 118 A. L. R. 533]:

"Respecting the misconduct of counsel occurring during the trial and while he was cross-examining witnesses, the defendants cite us to five separate occasions in which they claim that counsel transgressed the rules of propriety. . . . The situation before us is much like that which confronted this court in a former case in which it was said: 'The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorneys. In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to

which we have referred. Conceding some of the statements made by counsel, whatever the provocations thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing it is plainly wrong. This we think may not fairly be said here.' (*Lafargue* v. *United Railroads,* 183 Cal. 720, 724 [192 Pac. 538].)'' (See, also, *MacPherson* v. *West Coast Transit Co.,* 94 Cal. App. 463 [271 Pac. 509]; *Girard* v. *Irvine,* 97 Cal. App. 377 [275 Pac. 840]; *Aydlott* v. *Key System, supra*; *Mangino* v. *Bonslett,* 109 Cal. App. 205 [292 Pac. 1006]; *Mullin* v. *Rousseau,* 112 Cal. App. 719 [297 Pac. 944]; *Wieck* v. *Hockett,* 115 Cal. App. 600 [2 Pac. (2d) 476]; *Schlenker* v. *Egloff,* 133 Cal. App. 393 [24 Pac. (2d) 224]; *Alberts* v. *Lytle,* 1 Cal. App. (2d) 682 [37 Pac. (2d) 705]; *Haskins* v. *Southern Pac. Co.,* 3 Cal. App. (2d) 177 [39 Pac. (2d) 895]; *Gerberich* v. *Southern California Edison Co.,* 26 Cal. App. (2d) 471 [79 Pac. (2d) 783]; *Behrendt* v. *Times-Mirror Co.,* 30 Cal. App. (2d) 77 [85 Pac. (2d) 949].)

The foregoing rule is applicable here. We are informed by a supplemental transcript that on the hearing of the motion for new trial the trial judge was furnished a transcription of the reporter's notes showing the most serious of the various acts of misconduct now urged here. He had the record before him and by denying the motion for new trial inferentially held that the misconduct did not prejudice the rights of the defendant. Under the facts before us we must conclude ''that the conclusion of the trial court on the motion for a new trial is entitled to much consideration'' (*Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954]) and while its decision on the question is not final on appeal, we cannot conclude that it was wrong and that the defendant suffered prejudice or that the judgment is unjust.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1941.