[Civ. No. 13422.   First Dist., Div. One.   Sept. 30, 1947.]

SALLY ANN LOUIE, Respondent, v. HAGSTROM'S FOOD STORES, INC. (a Corporation), Appellant.

Theodore Hale and Carroll B. Crawford for Appellant.

J. Adrian Palmquist and Nathan G. Gray for Respondent.

PETERS, P. J.—Plaintiff brought this action to recover for personal injuries resulting from a fall in the entrance to defendant's grocery store. The cause was tried before a jury. It brought in a verdict of $2,500. From the judgment entered on the verdict, and from the order denying the defendant's motion for a judgment notwithstanding the verdict, defendant appeals. It is defendant's theory on this appeal that the evidence is insufficient, as a matter of law, to establish any negligence on its part, that the evidence demonstrates, as a matter of law, that plaintiff was guilty of contributory negligence, and that the court erred in not sustaining its objections to certain evidence relating to several items of consequential damage, and erred in its instructions on this issue.

Defendant operates a grocery and vegetable store in Oakland. Plaintiff was a regular customer of the store. The establishment is of the self-service type, with a cashier's stand located near the front of the store, a short distance from the entrance. The floor is of concrete, and the various articles for sale are displayed in open shelves, boxes and bins. In approximately the center of the wide entrance is a substantial wooden post extending from the floor upwards

into the frame of the door. The accident happened at the base of this post, while plaintiff was leaving the store after having selected and paid for her various purchases. The day in question was October 6, 1945, which was a Saturday, and the time was between 4 and 6 p. m. Admittedly, Saturday is a very busy day in the store and, admittedly, from 3 to 5 p. m. is one of the busiest periods. Defendant had on duty four employees at the time of the accident, but one was upstairs, one in the back room, and one in the back of the store. None of these three employees saw the accident. They were called as witnesses for defendant. The cashier, a Miss Willis, was not called as a witness, there being evidence that she was out of the state at the time of trial. There is evidence that Miss Willis was working in such a position that when she was wrapping packages or checking purchases her back was to the post. There is also evidence, however, that her duties called for her to turn around to get articles from places where she would be facing the post. Although there is some conflict in the evidence, that most favorable to plaintiff, which we are required to accept, is to the effect that the cashier could see the foot of the post from her spot near the cash register. This evidence is corroborated by pictures introduced into evidence which show that this is the fact.

There is no dispute that it was a puddle of syrup that caused the fall. One of the employees of defendant testified that after the accident he cleaned up the syrup from the cement floor; that there was a broken glass pint jar of Karo syrup lying in a torn paper bag alongside the post. Defendant makes no contention that the syrup was plaintiff's, or that she had dropped it or caused it to drop. Plaintiff makes no contention that any employee of defendant placed the broken bottle at the foot of the post. On this appeal there is no dispute concerning the nature or extent of plaintiff's injuries.

Plaintiff testified that she selected her purchases, had them checked by the cashier, paid for them, picked them up, and started to leave the store, intending to go to her husband's car, then parked near the store. Just as she reached the post she slipped and fell in a sitting position. She tried to get up and slipped again. She testified that she "walked into something that was slippery and sticky and caused my feet to fly from under me"; that she concluded she had fallen in some syrup; that she did not see the syrup

"till I found myself sitting in it"; that as she sat on the floor she saw the bag near the post with the syrup seeping from it; that the puddle of syrup was inside the entrance to the store; that her packages flew from her arms when she fell; that the seeping syrup had formed a puddle "about a foot and a half" at the base of the post; that when she fell and sat in the puddle "it smeared to a much larger puddle"; that the syrup got all over her shoes, on and under her clothes; that a little boy picked up her packages and the cashier grabbed a towel and tried to clean her off; that she refused assistance because she was embarrassed and in pain and wanted to get home and lie down.

One of the employees of defendant, Pattee by name, testified that at the time of the accident he was in charge of the produce counter and that it was also his duty to sweep the store periodically and to keep the aisles clear. At the time of the trial—October, 1946—he was the manager of the store in question. He testified that he cleaned up the syrup after the accident; that there was an egg-shaped puddle of syrup of about 6 to 8 inches; that he swept the floor periodically and always swept from the front towards the back; that it took about 15 minutes to sweep the entire store; that he had just completed the sweeping operation when the accident occurred. There is some confusion in his testimony on this point, defendant's counsel at the trial interpreting Pattee's evidence to mean that it was 5 or 10 minutes after the sweeping operation had been completed that the accident occurred. The testimony is susceptible of that interpretation. Pattee testified that when he swept the entrance the broken bottle of syrup was not there. Thus there was a period of between 15 to 25 minutes immediately before the accident that Pattee, and apparently no other employee, had examined the entrance to the store.

Pattee also testified that he was familiar with the characteristics of syrup; that the kind here involved was Karo; that Karo is a thick syrup that does not flow freely; that October 6, 1945, was a cold day; that syrup will flow more freely under conditions of warmth than under cold conditions; that Karo is thick and adhesive and does not flow freely; that if Karo were dropped on the floor it would "just sit there before it began to gradually ooze out."

The other employees of defendant knew nothing about the accident and could add nothing to the factual back-

ground. On this evidence defendant contends that, as a matter of law, there is insufficient evidence to sustain the implied finding of the jury that it was negligent, and urges that its motions for a nonsuit, directed verdict and judgment notwithstanding the verdict should have been granted. In this connection defendant vigorously contends that there is no evidence to show when the bottle of syrup was dropped on the floor, nor how long it had been there prior to the accident, nor that any employee of defendant put it there, nor that any employee of defendant had actual knowledge of its presence, nor any evidence to support a finding of constructive knowledge. Plaintiff freely admits that there is no evidence that any employee of defendant placed the syrup on the floor, and it must be conceded that there is no direct evidence of the exact time the bottle was broken, and there is no evidence that any employee of defendant had actual knowledge of its presence. The real question presented is whether there is sufficient evidence to sustain the implied finding of the jury that the syrup had been on the floor for a sufficient length of time so as to have required defendant or its employees, in the exercise of ordinary care, to have discovered it and corrected the condition before the accident.

As frequently occurs in the field of torts there is no substantial dispute over the applicable rules of law—the real dispute is over the application of those rules to the facts of the case. Admittedly, the plaintiff, as a customer, was the business invitee of defendant. Admittedly, the defendant is not an insurer of the safety of business visitors. ■ The true rule is that the owner or occupier of business premises owes to invitees a duty to exercise reasonable care in keeping the premises reasonably safe for such invitees. (*Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128]; *Owen* v. *Beauchamp*, 66 Cal.App.2d 750 [152 P.2d 756]; *McKellar* v. *Pendergast*, 68 Cal.App.2d 485 [156 P.2d 950].) ■ To impose liability for injuries suffered by an invitee due to the defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect

after he has discovered it." (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841] ; see, also, *Rothschild* v. *Fourth & Market St. R. Co.*, 139 Cal.App. 625 [34 P.2d 734] ; *Stoddard* v. *Roberts Public Markets, Inc.*, 27 Cal.App. 2d 166 [80 P.2d 519] ; *Wills* v. *J. J. Newberry Co.*, 43 Cal.App. 2d 595 [111 P.2d 346] ; *Williamson* v. *Hardy*, 47 Cal.App. 377 [190 P. 646].)

The same rule is adopted by the Restatement of Torts. Section 343. reads as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care should discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them."

So far the parties agree. ██ But the defendant contends that before the question can arise as to whether the owner or occupier should have discovered the defective condition there must be some evidence of how long the defective condition existed, and it urges that there is no such evidence here. It seems to be the thought of defendant that such evidence must be direct evidence. That is not the law. The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. ██ It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it. In *Rothschild* v. *Fourth & Market St. R. Co.*, 139 Cal.App. 625, 627 [34 P.2d 734], the court stated: "However, the question whether the condition which caused the injury had existed so long as to be discoverable by the defendant within a reasonable time is one for the jury."

In *Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128], the Supreme Court stated the rule as follows: "Whether the floor of a store or public market place was so negligently maintained as to render the person responsible for its condition liable in damages is a question of fact to be decided by the jury."

The same court in *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 807 [117 P.2d 841], declared: "Further, the question of whether the condition which caused the injury had existed

so long as to be discoverable by the store owner within a reasonable time is for the jury.''

The exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances.　■　A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious. This was recognized by the Supreme Court in the Tuttle case, *supra,* where at page 130 the court stated: ''The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose.''

■　In the instant case it is quite clear that there was sufficient circumstantial evidence from which the jury could have inferred that the syrup was on the floor a sufficient time so that, in the exercise of reasonable care, the defendant should have discovered it and remedied the defective condition. There is evidence that the cashier could see the foot of the pole from her position at the cashier's desk; that while her back was to the pole when wrapping packages and collecting money her duties required her to face the front of the store on frequent occasions. Moreover, it is a reasonable inference that when this glass jar fell to the concrete floor with sufficient force to break it, it must have made an appreciable noise which the cashier should have heard. There is evidence that no employee of defendant examined the front entrance for between 15 to 25 minutes immediately preceding the accident. There is evidence that the puddle of syrup had reached appreciable proportions before the accident. There is evidence of defendant's own witness that this syrup was quite thick, possessed adhesive qualities, that the day was cold, and that on such a day the syrup would flow quite slowly. It is a reasonable inference that for this heavy thick fluid to have seeped through the paper bag and to have formed a puddle of appreciable proportions would take a substantial period of time. When

this evidence is considered, keeping in mind that this was a very busy grocery and vegetable store, and keeping in mind the obvious dangers that exist in such establishments, we think there was ample evidence, under the rule of the cited cases, to sustain the jury's implied finding that this condition existed long enough so that defendant should, in the exercise of ordinary care, have discovered and remedied it.

None of the California cases cited by defendant compels or suggests a contrary conclusion. While defendant cites some cases from other states that contain language supporting its position, in view of the wealth of California authority on the subject, those cases cannot be deemed authoritative in this state. In support of its contention that plaintiff, as a matter of law, has not met her responsibility of showing the existence of the defect for a sufficient length of time to bring into operation the rule of constructive notice defendant places its main reliance on *McKellar* v. *Pendergast,* 68 Cal.App.2d 485 [156 P.2d 950], and *Owen* v. *Beauchamp,* 66 Cal.App.2d 750 [152 P.2d 756]. In the McKellar case the appellate court affirmed a judgment for the defendants based on the granting of a motion for judgment notwithstanding the verdict. There the plaintiff, a tenant in an apartment house, slipped on some oily substance on the lobby floor. Her main theory was that the janitor negligently allowed garbage drippings to fall on the floor. She offered no substantial evidence on that issue. Plaintiff also argued that if a third person dropped the substance on the floor defendant should have remedied the condition. The appellate court held that there was no evidence at all to support that contention because there was no direct or circumstantial evidence as to how long the unknown oily substance had been on the floor. That case is to be distinguished from the instant one where, as already pointed out, there was substantial evidence to support a reasonable inference that the syrup had been on the floor an appreciable time. Moreover, as already pointed out, while the ''degree'' of care in the instant case is identical with that required in the McKellar case, the ''quantum'' of care necessary to constitute ''reasonable'' care is more exacting and greater in a public store than in an apartment house lobby.

The other case upon which defendant places its main reliance is *Owen* v. *Beauchamp, supra.* It was decided by

a divided court, and, as in the McKellar case, two justices of the Supreme Court voted for a hearing. Here the plaintiff slipped and fell on some dental wax on the floor of a dentist's reception room. The trial court directed a verdict for defendant and the appellate court affirmed. Apparently it was the theory of plaintiff that upon proof of the presence of the wax on the floor she had proved sufficient facts to take the case to the jury. There was a total absence of evidence on the "lapse of time" issue. In the instant case there was ample evidence that the syrup had been on the floor a substantial time.

The next contention of defendant is that the evidence, as a matter of law, shows contributory negligence. The contention is predicated upon plaintiff's evidence that she did not look at the floor as she walked towards the entrance of the store. This point is without merit. ■ It is elementary law that contributory negligence becomes a question of law when, and only when, from the facts, reasonable men can draw but one inference, and that an inference that points unerringly to the negligence of plaintiff contributing to the injury. In all other cases the question of contributory negligence is one of fact for the jury. (See discussion and cases cited in *DeGraf* v. *Anglo California Nat. Bank,* 14 Cal.2d 87 [92 P.2d 899]; *Parker* v. *Manchester Hotel Co.,* 29 Cal.App.2d 446 [85 P.2d 152]; *Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128].) ■ The exact point now urged by defendant —that the customer is obligated to keep his eyes on the floor—was decided adversely to defendant's contention in *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, at page 601 [111 P.2d 346], where it was stated: "Defendant operated a retail store for the purpose of selling goods to customers. In order to promote sales the goods were displayed on counters to attract the attention of the customers. It should be trite to suggest that a customer could not look at the goods on the counters and at the same time keep his eyes on the floor. Since it was the intention of defendant that its customers should see the goods displayed on the counters, and not have to watch the floor, it should have realized that dangerous substances on the floor would create a dangerous condition and should have acted accordingly."

The last point raised by defendant raises a most troublesome question. In her complaint plaintiff prayed for $5,000

general damages, and $245.38 special damages for loss of wages, costs of X rays and medical care. The jury brought in a verdict of $2,500. The evidence shows that plaintiff is a married woman and clearly indicates that at the time of the accident, and after, she was residing with her husband. The husband was not made a party plaintiff. The defendant in its answer pleaded as a defense to the cause of action for consequential damages that the plaintiff was a married woman living with her husband ''and that said plaintiff has not the legal capacity to maintain'' the action for special damages. The trial court instructed that plaintiff could recover for special damages. Defendant now maintains that this was error because, so it is contended, the husband is the only one that may recover for such damages.

 Before directly discussing the legal point involved, the state of the evidence on this issue should be reviewed. At the trial the plaintiff offered evidence of but two items of special damage—the amount of the doctor's bill, and loss of wages. The evidence as to the amount of loss of wages showed that such loss was substantial. The evidence on this issue came into the case without objection and defendant's counsel cross-examined plaintiff at length on this issue. This being so, defendant cannot now object to the introduction of this evidence of special damages.  Moreover, whatever may be the law as to the necessity of joining the husband where the wife sues to recover for general and special damages, section 370 of the Code of Civil Procedure expressly provides that a ''married woman . . . may sue without her husband being joined as a party in all actions, including those for injury to her person . . . or for the recovery of her earnings. . . .'' This section expressly confers the right on a married woman to sue alone for the ''recovery'' of her earnings.

 This leaves for consideration only the amount of the doctor's bill, that being the only other item of special damage on which evidence was offered. While the doctor for plaintiff was on the stand plaintiff sought to offer proof that the reasonable value of the doctor's services was $150, which amount was unpaid. Defendant objected on the ground that the husband alone could sue for such damage. After argument the trial judge overruled the objection and admitted the evidence that such services were reasonably worth $150. This is the only item of special damage involved on this point. Even if defendant were correct on this point,

which it is not, the then erroneous admission of this evidence would not require a complete reversal. Plaintiff, while contending that a married woman may recover for such damages, at the oral argument consented that, if she is in error, this court should reduce the judgment by the amount of $150. In that event, that would be the proper procedure for an appellate court to follow.

We turn now directly to a discussion of the right of a married woman living with her husband when she sues to recover for personal injuries, to recover also for consequential damages, such as medical expense. The law is most confused on this subject. There are some appellate court cases holding or implying that even though the wife may, by statute, sue alone for her personal injuries, she cannot, without joining her husband, recover for consequential damages directly attributable to such injuries, because, so it is said, the recovery would be community property, and the husband has the power of management and control over such property. (*Redwing* v. *Moncravie,* 131 Cal.App. 569 [21 P.2d 986]; *Martin* v. *Costa,* 140 Cal.App. 494 [35 P.2d 362]; *Meier* v. *Wagner,* 27 Cal.App. 579 [150 P. 797].) There is at least one early case—*Fassett* v. *Nascimiento,* 108 Cal.App. 14 [291 P. 269]—and several much later appellate court cases, where it was directly held that section 370 of the Code of Civil Procedure, *supra,* conferring on the wife the right to sue alone for her personal injuries includes, by necessary implication, the right to recover for consequential damages arising out of such injuries. The leading case so holding, and where the point is adequately discussed, is *Purcell* v. *Goldberg,* 34 Cal.App.2d 344 [93 P.2d 578]. The Supreme Court, without a dissenting vote, denied a hearing in that case. This case was followed in *Hyman* v. *Market Street Ry. Co.,* 41 Cal.App.2d 647 [107 P.2d 485], and again a hearing was denied by the Supreme Court, two justices voting for a hearing. (See, also, *Ades* v. *Brush,* 66 Cal.App.2d 436 [152 P.2d 519].) These later cases would be conclusive on the issue were it not for the fact that subsequent to the decision in the Hyman case the Supreme Court decided the case of *Sanderson* v. *Niemann,* 17 Cal.2d 563 [110 P.2d 1025]. In the Purcell and Hyman cases the problem had arisen in factual situations where the wife was injured, brought suit for her personal · injuries, and attempted, in addition, without joining her husband, to recover

for consequential damage. In both cases where the problem thus directly arose it was held that the wife could recover for such items of damage. But in the Sanderson case the problem did not arise in any such clear-cut fashion. The circumstances were most unusual. Job and Hazel Sanderson were husband and wife. They owned, as community property, an automobile. While the husband was operating the car, accompanied by his wife, a collision occurred between that car and one owned by defendant. Job and Hazel Sanderson filed an action in the small claims court to recover for damages to their automobile and for medical expenses paid by the husband for the care of certain injuries received by the wife in the collision. The plaintiffs recovered judgment for $12.58 and that judgment became final. Thereafter Hazel Sanderson alone commenced an action against defendant in the superior court to recover damages for her personal injuries. The defendant contended that the wife had improperly attempted to split her cause of action by suing first in the small claims court for consequential damages, and later in the superior court for personal injuries, and that the first action was a bar to the second. The trial court so held. This was reversed by the Supreme Court, it being held that the small claims court judgment was not res judicata in the superior court action. It is important to note that that was the main issue before the Supreme Court. That court very properly points out that in the first action the husband could have sued alone and that the wife was not a necessary party to that action. The court then went on to discuss whether the wife had improperly split her cause of action against defendant by joining in the first action with her husband to recover consequential damages, and then suing alone in the second action to recover for her injuries. In the course of this discussion the Supreme Court stated (p. 568): "Therefore, unless it can be said that the provisions of section 370, Code of Civil Procedure, authorize the bringing of an action by the *wife* to recover for incidental or consequential damages which may have been sustained by reason of financial loss to the community,—which right of action has heretofore been generally recognized as existing in the *husband*—there has been no 'splitting' of a cause of action."

After discussing certain other code sections relative to the status of husband and wife with regard to the property

of the community, and the husband's duty to support his wife and supply her with medical care and attention, the court said (p. 569) : "When read in the light of the Civil Code sections hereinbefore referred to, there is nothing in the language of section 370 of the Code of Civil Procedure which would imply that in enacting the provisions of that section the Legislature intended to divest the husband of the primary right (which theretofore had been recognized as existing in the husband) to bring an action for the recovery of damages due to financial loss which had resulted to the community through the wrongful act of another,—and, in lieu thereof, to vest that right in the wife, merely because the damages thus sought to be recovered may have been sustained as a result of injuries which were personal to the wife."

At page 570 appears the following: "Although a few decisions have been rendered in this state wherein, in an action instituted by a married woman, in her own name, for the recovery of general damages for injuries to her person, it was held that she might also recover consequential damages [without citing any of those decisions, and particularly without mention of the Goldberg and Hyman cases, *supra*],— the weight of authority in this state is to the effect that the right of action for the recovery of consequential damages which may result from financial loss suffered by the community resides in the husband by virtue of his right of control of the community property." (Citing the Redwing case in 131 Cal.App. and the Martin case in 140 Cal.App.)

It is most important to note what was actually decided in the Sanderson case. So far as the issue under discussion is concerned, all that was decided was that the husband may sue for such consequential damages suffered by his wife, and that when he sues, the wife is not a necessary party to the action. That is undoubtedly good law. ▪ As stated by the Supreme Court, the "primary right" to recover rests in the husband by virtue of his power of management and control over the community property. When the husband is a party he is the one who is legally entitled to recover for such consequential damages. But the very existence of a "primary right" implies the existence of a "secondary right," and such "secondary right" obviously rests in the wife by virtue of section 370 of the Code of Civil Procedure. That section did not divest the husband of his "primary right" to

sue for such damages. It merely, in permissive language, conferred a right on the wife to sue for damages to her person and by necessary implication, for consequential damages resulting from such injury.

Moreover, when a wife is living with her husband, and sues for her personal injuries and likewise for consequential damages resulting therefrom without joining her husband, it may readily be inferred that the husband has consented to her acting on behalf of the community under familiar agency principles. (*Ades* v. *Brush,* 66 Cal.App.2d 436 [152 P.2d 519].) It must be remembered that the wife has a vested interest in the community property. Certainly, under such circumstances, if the wife first recovered for such injuries, and then the husband sought to recover, we would have no difficulty at all in holding the husband was estopped and that his action, if any, was against his wife. That fully protects a defendant. While he has a legal right not to be sued twice for the same damage, he has no legal right to escape liability entirely on a mere technicality. In many cases that would be exactly what would happen if defendant's arguments were to prevail.

In view of the fact that the point here under discussion was directly involved and decided adversely to the contention of defendant in the Goldberg and Hyman cases, *supra,* in view of the fact that the Supreme Court did not cite and therefore did not overrule those cases in the Sanderson case, *supra,* in view of the fact that the holding in the Sanderson case can be logically reconciled with the Goldberg and Hyman cases without overruling those cases, and in view of the sound and logical reasons that support the Goldberg and Hyman cases, we are inclined to follow the rule of those cases until they are directly overruled or until the Supreme Court directly decides to the contrary.

The judgment and order appealed from are affirmed.

Bray, J., and Finley, J. pro tem., concurred.

A petition for a rehearing was denied October 30, 1947, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1947. Schauer, J., voted for a hearing.