Filed 12/16/22  Torres v. Super Center Concepts CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| OLIVIA TORRES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SUPER CENTER CONCEPTS, INC.,<br><br>Defendant and Respondent. | B313172<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV19673) |

————————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Judge.  Affirmed.

Law Offices of Edward Shkolnikov, Edward Shkolnikov and Michael Sean Devereux for Plaintiff and Appellant.

Berman, Berman, Berman, Schneider & Lowary, Stephanie Berman Schneider and Gina M. Genatempo for Defendant and Respondent.

————————————

Plaintiff Olivia Torres claims that defendant Super Center Concepts, Inc., which does business as Superior Grocers (Superior)[1] negligently maintained its premises, causing her to slip in a puddle of water and fall.  The trial court entered summary judgment against Torres on her claims.  On appeal, Torres contends two triable issues of material fact should have precluded summary judgment.  First, Torres asserts a factual dispute about whether Superior's refrigerated seafood and meat display was the source of the water in which she slipped obviated any need for Torres to demonstrate that Superior knew of the dangerous condition created by the water puddle.  Second, Torres argues that even if there was no evidence Superior itself caused the dangerous condition, a triable issue of fact existed as to whether Superior knew, or in the exercise of reasonable care should have known, of the dangerous condition and failed to remedy it within a reasonable time.

We conclude that Torres failed to present admissible evidence that Superior created the dangerous condition, or had actual or constructive knowledge of the dangerous condition prior to Torres's slip and fall.  Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.    Factual Summary**

Superior owns and operates a grocery store in Cudahy, California.  On June 18, 2017, Torres, her husband, and her

---

[1] In its answer, Superior alleged its legal name is Super Center Concepts, Inc.  doing business as Superior Grocers and that it was erroneously sued as Super Center Concepts, Inc.  For ease of reference, we use the name under which Superior does business.

daughter visited the Cudahy store. Torres was wearing sandals. At approximately 9:47 a.m., the family made their way to the meat and seafood counter. At 9:55 a.m., as Torres walked in front of the counter to the ticket dispenser to get in the queue for service, she slipped on water and fell. Torres's husband heard her crying out but did not see the fall. The parties do not dispute that "[t]here was a large pool of water and [Torres's] clothes were soaked as a result of slipping in the water."

According to Torres, while her husband helped her up or soon thereafter, her husband told two male employees behind the counter that there was water on the floor.[2] It is undisputed that one of the employees from the meat counter thereafter cleaned up the water with paper towels. In their declarations, Torres and her husband claim this employee was named Jose and that he admitted to them that the water was coming from the meat and seafood refrigerated display. Torres did not offer a declaration or deposition testimony from this employee, and Superior has no record of an employee named Jose working at the meat counter on June 18, 2017. At the time she filed her opposition in December 2020, Torres contended, without citing any evidence, that whoever the employee was he "still works at the store."

Torres acknowledged that she did not actually observe water coming from the display case or see "a flow of water, like an active leak." Torres testified at her deposition that she did not know if Superior knew the water was on the floor before she fell; nor did she know how long the water had been on the floor before

---

[2] Torres claims neither employee took any action until her husband told them a second time about the water while she and her husband waited to order meat.

3

she fell. She also acknowledged that "Jose" did not say the refrigerated display case had leaked on any prior occasion or how long it had been leaking that day.

Superior asserts that Torres has no evidence the meat counter refrigerator was actively leaking that day. In support of its motion, Superior produced evidence that it has a policy and practice for the Cudahy store to submit work orders for refrigeration issues through a cloud-based system; that a leaking refrigerator would have been tracked through this electronic system; that Superior would "immediately send out a service provider to repair the refrigerator" upon a request for service; and that its records for the period June 1, 2017 through June 30, 2017 do not reflect any leak, work order request, or work done relating to the Cudahy store's meat counter refrigerator.

Superior also adduced evidence that the Cudahy store's policy was and is to have an employee, called a porter, inspect each aisle, the store perimeter, and the restrooms each hour to ensure the floors are clean, dry, and free of hazards. The porter is also to clean or otherwise remedy problems the porter may encounter on his or her rounds. Each porter carries a card with a bar code, which the porter scans when he or she begins and completes sweeps of different store sections. Thus, the times for the beginning and ending of the sweeps of each area are electronically logged in a "Sweep Trax Activity Report" (Sweep Report). The Sweep Report cannot be changed once the sweeps are scanned and recorded. It is Superior's policy that a scan upon completing a sweep cannot be made unless and until the area is clean and free of hazards. The store's assistant director stated in his declaration that he "personally regularly walked through the store several times daily to ensure that the porters were

4

complying with this sweep procedure and [he] know[s] that the managers of the departments were also aware of the importance of the hourly sweep procedures and they also watched to see that their departments were regularly cleaned."

Superior had two porters on duty on June 18, 2017. It is undisputed the Sweep Report for that day states that a porter inspected the area of the store in which the meat counter is situated at 7:03 a.m., 8:03 a.m., 8:41 a.m., 9:33 a.m., and 10:05 a.m. The sweep of the meat counter area preceding Torres's fall began at 9:33:08 a.m. and ended at 9:34:41 a.m. As part of its practice, Superior took a statement from the porter that swept the meat counter area on the morning of June 18, 2017. The statement reflects that at 9:34 a.m. on June 18, 2017, the porter "passed through the front end area and where the incident happened, [and] he did not see any substance or hazard on the floor."

Torres baldly asserts, without any supporting detail or evidence, that the sweep was not properly done. Torres testified at her deposition that she did not know the last time the store inspected or cleaned the area where she fell; she did not know whether anyone complained to the store about a substance on the floor before she fell; and she did not see any footprints or cart tracks in the substance on the floor before she fell.

In support of her summary judgment opposition, Torres offered a video taken by her husband after she fell. That video is not included in the appellate record. According to Torres's husband, he "took a video of the man cleaning up and of my wife's knee." Torres describes the video as showing "the water that had collected at the meat counter." Superior similarly characterizes

5

the video as a short, post-incident video that depicts water on the floor.

In her declaration, Torres stated she took "photographs approximately one year [after the incident] depicting the towels that were packed into the meat and seafood refrigerator and the store floor." Those photographs are not in the appellate record. Torres also asserted that as of December 30, 2020, she returned to the Cudahy store and observed "towels stuffed at the base of the meat counter."

## B.    Procedural History

On June 5, 2019, Torres filed complaint against Superior alleging causes of action for premises liability and general negligence. She sought compensatory damages for hospital and medical expenses, "general damage," and "incidental" damages.

On October 29, 2020, Superior filed a motion for summary judgment or, in the alternative, summary adjudication. It argued Torres could not establish the required elements of either cause of action because she could not demonstrate a triable issue of material fact as to whether Superior created the alleged dangerous condition or had notice of it.[3]

_____

[3] In its answer to Torres's complaint, Superior asserted several affirmative defenses, including that it had no actual or constructive knowledge of the alleged dangerous condition for a sufficient time prior to the alleged injury to have taken measures to protect against the condition. In its motion, Superior argued it was entitled to summary adjudication in its favor on its affirmative defense that it had neither actual nor constructive notice.

6

In her opposition, filed December 31, 2020, Torres argued that pursuant to Code of Civil Procedure[4] section 437c, subdivision (h), she "should be allowed the opportunity to complete discovery." Torres's counsel submitted a declaration averring that due to the press of his criminal practice as well as staffing issues, he did not realize until after the Thanksgiving holiday that additional depositions were necessary to oppose Superior's motion. Then, "with the advent of the [h]oliday season it was realized that there was no way timely discovery could be completed to oppose the [motion for summary judgment]." Torres's counsel identified several persons to depose, including "the porter, the man seen cleaning the water, the manager, a [person most knowledgeable] as well as the declarant[s] in support of the [motion for summary judgment]." Torres requested a 45-day continuance of the hearing on the motion.

On January 8, 2021, Superior filed its reply brief. It argued, inter alia, that Torres had not met the requirements of section 437c, subdivision (h) because "she has not specified the 'essential facts' needed to oppose the [m]otion that she thinks she can obtain through discovery." Further, Torres made no effort to schedule the depositions she claimed were necessary between the date Superior filed its motion (October 29, 2020) and the date Torres filed her opposition (December 31, 2020).

On January 15, 2021, the trial court heard argument on the summary judgment motion. Superior's counsel addressed the trial court's tentative on the issue of whether the trial court could find, as a matter of law, that the 22 minutes between the porter

_____

[4] Subsequent unspecified references are to the Code of Civil Procedure.

sweep and Torres's fall was an insufficient amount of time for Superior to have discovered the dangerous condition.[5] Citing *Eidem v. Target Corp.* (C.D.Cal. Aug. 24, 2011, No. EDCV 10-01000 VAP) 2011 U.S. Dist. LEXIS 95544, Superior argued that although California courts do not set forth a specific time period, cases that have found constructive notice involve time periods of 30 minutes or longer between the inspection and the accident.

The trial court inquired about the impact of the employee's statement that the refrigerator was leaking. Superior responded that the employee's statement concerned what Superior knew after the incident and that the statement was hearsay. The trial court also asked whether it should consider if Torres could obtain admissible evidence on this point by the time of trial. Superior responded that Torres had sufficient time to conduct discovery necessary to oppose the motion. Superior further argued that if Torres felt that she needed more time, she could make such a request under "the code," and erroneously claimed "there's an avenue for that that they're not seeking."

The trial court then asked Torres's counsel to address Superior's arguments that the employee's statement was hearsay and that Torres had not demonstrated she would be able to offer any admissible evidence that the refrigerator was leaking. Torres's counsel responded that he submitted on the tentative and that it was for the trier of fact to decide if there was sufficient notice of the dangerous condition.

The trial court again asked Superior whether it should disregard completely the statement from the employee

---

[5] The reporter's transcript reflects that the court issued a tentative ruling, which is not included in the appellate record.

8

concerning the refrigerator leak.  Superior's counsel again argued the statement was hearsay.  Torres's counsel asked to respond. He argued that there was no evidence that the porter actually cleaned the area in front of the refrigerator unit and that Torres had carried her burden to show there was a dangerous condition in the form of water on the floor.  Further, counsel argued "we need to do the deposition of [the person most knowledgeable] [inaudible] was there.  Without that it would be premature to— on defense's part to state that the aisle was clean."  The trial court took the matter under submission.

On January 26, 2021, the trial court issued a minute order granting the motion for summary judgment without any explanation of its reasoning for doing so.  After the trial court entered judgment in favor of Superior, Torres timely filed a notice of appeal.

## DISCUSSION

### A.    Statutory Framework and Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."  (§ 437c, subd. (c).)  A defendant seeking summary judgment has met the "burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established . . . ." (*Id.*, subd. (p)(2); see also *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 432 [party moving for summary judgment "bears the initial burden of demonstrating that at least one of the elements of plaintiff's . . . claim is without merit"].)

Once the defendant has met that burden, the burden shifts to the plaintiff "to show that a triable issue of one or more

material facts exists as to the cause of action."  (§ 437c, subd. (p)(2); see also *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1518.)  "[A]n issue of fact can only be created by a conflict of evidence.  It is not created by speculation or conjecture.  [Citation.]"  (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807.)

We review summary judgment rulings de novo.  In doing so, we liberally construe the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolve any evidentiary doubts or ambiguities in the plaintiff's favor.  (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1083, citing *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.)

## B.  Torres Did Not Demonstrate Any Disputed Issues of Material Fact

"[A]lthough a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).) "Premises liability is a form of negligence . . . ."  (*Brooks v. Eugene Burger Management Corp.* (1989) 215 Cal.App.3d 1611, 1619.)  "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury."  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)  To establish causation, the plaintiff must show that the store owner either directly caused the dangerous condition or had actual or constructive knowledge of the dangerous condition.  (*Ortega, supra*, at pp. 1205-1206; *Hatfield v. Levy Bros.* (1941) 18 Cal.2d 798, 806.)

10

1.  *Torres Did Not Identify Any Admissible Evidence that Superior Created the Dangerous Condition*

Torres first argues "[t]here are triable issues of fact as to whether [Superior] created the condition which caused [Torres] to fall. Because there are triable issues of fact that [Superior's] employee 'created the dangerous condition' there would be no need to show notice either actual or constructive."

Torres, however, does not support this argument with any facts demonstrating Superior or its employees caused there to be water on the floor. Instead, she argues Superior "created" a dangerous condition when it failed to clean the water. This argument conflates the law governing when a premises owner directly causes the dangerous condition with the law governing a premises owner having actual or constructive knowledge of a dangerous condition caused by others.

As our Supreme Court described in *Hatfield v. Levy Bros.*, *supra*, 18 Cal.2d 798, "[w]here the dangerous or defective condition . . . has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition . . . . Under such circumstances knowledge thereof is imputed to him. [Citation.]" (*Id*. at p. 806; see also *Sanders v. MacFarlane's Candies* (1953) 119 Cal.App.2d 497, 501 ["When an unsafe condition . . . has been created by the owner of the property himself or by an employee . . . , the invitee need not prove the owner's notice or knowledge of the dangerous condition"].)

In contrast, "[w]here the dangerous condition is brought about by natural wear and tear, or third persons, or acts of

11

God . . . , then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises." (*Hatfield v. Levy Bros., supra*, 18 Cal.2d at p. 806.) "[W]here the plaintiff relies on the failure to correct a dangerous condition [not created by the owner or its employee] to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it." (*Ortega, supra*, 26 Cal.4th at p. 1206.)

Thus, to impose liability on Superior without showing actual or constructive notice, it is not sufficient to assert that Superior created the dangerous condition because it (or its employee) failed to clean up the water. Rather, Torres must adduce evidence that Superior or its employee was the source of the water and not a third party, such as another customer. Torres has not done so.

Torres claims the water came from the meat display refrigerator, but she acknowledged that neither she nor her husband personally observed the refrigerator leaking. The only evidence she offers in support of her claim the display case was the source of the water—the hearsay statement of the purported employee "Jose"—is inadmissible.[6] Torres did not offer a

_____

[6] Torres does not contend that the video taken after the incident depicts a leak coming from the meat display. Additionally, although Torres states she took photographs of towels in the meat display and on the store floor approximately one year after the incident, she presents no evidence that these

12

declaration or any deposition testimony of the employee; nor was she able to accurately identify him notwithstanding the fact that, according to Torres, he still worked at the store at the time she filed her opposition.

In the trial court, Torres did not address Superior's repeated hearsay objection to the purported statement by "Jose," even when asked by the trial court to do so. Torres' opening appellate brief similarly does not address the trial court's implied ruling not to accept evidence of the purported employee's statement by granting summary judgment. Rather, Torres waited until her reply brief on appeal to argue the statement is admissible under the hearsay exception in Evidence Code section 1224. Torres has thus forfeited this argument. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"]; *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [refusing to entertain an argument raised for the first time in a reply brief].)

Even if the argument was not forfeited, we find it unpersuasive. Evidence Code section 1224 states that "[w]hen the liability[,] obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, . . . evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty." This section is inapplicable because Torres's claims against Superior are not based on any liability,

---

towels were placed there due to a pervasive leak from the meat display existing as of the date of her accident although she "still frequent[s] the store."

13

obligation, or duty of "Jose," or even any act or omission by him, but rather his purported admission about the source of the water. (See *Labis v. Stopper* (1970) 11 Cal.App.3d 1003, 1005 [statement admissible under Evid. Code, § 1224 when it "related a specific and detailed act by the employee" upon which liability was based].) While such out of court statements by employees can be admissible against their employers, Torres would first need to show that "Jose" was authorized to speak on the subject matter of the statement. (See Evid. Code, § 1222, subd. (a).) She adduced no such evidence.

As for Torres's statements that she observed towels at the meat counter on two instances—a year after the incident and two and a half years after the incident—these after the fact observations are too infrequent and remote in time to demonstrate a triable issue of fact as to whether the refrigerator unit was the source of the puddle on June 18, 2017.

Accordingly, Torres has not carried her burden to demonstrate a triable issue as to whether Superior created the dangerous condition.[7]

---

[7] In the trial court, Torres suggested she could have obtained additional evidence relevant to opposing the motion if the trial court continued the matter pursuant to section 437c, subdivision (h). However, she does not argue on appeal that the trial court erred in denying this request. "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [" 'This court is not required to discuss or consider points which are not argued or which are not supported by citation to authorities or the record' "].)

2.   *Torres Did Not Demonstrate a Disputed Issue as to Whether Superior Had Actual or Constructive Knowledge of the Dangerous Condition*

Torres argues there are disputed issues as to whether Superior had actual or constructive knowledge of the water on the ground before the accident.  As to actual notice, she argues that the meat counter employee's statement that the water came from the refrigerator unit establishes Superior's actual knowledge of the leak.  As noted above, this hearsay statement was inadmissible.  Even if it was considered, the statement does not demonstrate that "Jose" knew of the leak before Torres fell.  She acknowledged in her deposition that "Jose" did not say the refrigerator had leaked on any prior occasion or how long it had been leaking that day.  She also testified she did not know if Superior knew the water was on the floor before she fell.  Thus, Torres did not demonstrate a triable issue as to Superior's actual knowledge of the dangerous condition prior to the accident.

Turning to constructive knowledge, it is well established that a "plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence."  (*Ortega*, *supra*, 26 Cal.4th at p. 1206.)  "[P]laintiffs may demonstrate the storekeeper had constructive notice of the dangerous condition if they can show that the site had not been inspected within a reasonable period of time so that a person exercising due care would have discovered and corrected the hazard. [Citation.]  In other words, if the plaintiffs can show an inspection was not made within a particular period of time prior to an accident, they may raise an inference the condition did exist long enough for the owner to have discovered it." (*Id*. at pp. 1212-

15

1213.) Whether a store's inspections are reasonable must be determined in light of the circumstances in each case, and there is no "exact time the condition must exist." (*Louie v. Hagstrom's Food Stores, Inc.* (1947) 81 Cal.App.2d 601, 608.)

Although the issue of whether the dangerous condition existed long enough for the owner to discover it is ordinarily a question of fact for the jury (*Ortega, supra*, 26 Cal.4th at p. 1213), it can be decided as a matter of law when the evidence "is insufficient to support an inference that the defendant proprietor failed to exercise the care required." (*Girvetz v. Boys' Market, Inc.* (1949) 91 Cal.App.2d 827, 831.) For example, in *Girvetz v. Boys' Market, Inc.*, the appellate court held that one and one-half minutes was too short as a matter of law to provide constructive notice to the store owner of the dangerous condition. (*Id*. at p. 832.) At the other end of the spectrum, the appellate court in *Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281 concluded the plaintiff raised a triable issue of material fact as to whether a gym negligently inspected and maintained its exercise equipment when no staff member inspected or cleaned the equipment for at least 85 minutes prior to the accident. (*Id*. at p. 1284; see also *Ortega, supra*, at p. 1210 [affirming the jury's verdict for the plaintiff where milk might have been on the floor for 15 to 20 minutes or as much as two hours].)

In *Louie v. Hagstrom's Food Stores, Inc., supra*, 81 Cal.App.2d 601, the appellate court affirmed the trial court's denial of the defendant's motion for judgment notwithstanding a jury verdict where the plaintiff slipped and fell in syrup 15 to 25 minutes after the site had been examined. The evidence in that matter supported an inference that the nearby cashier would have heard the "appreciable noise" caused by the breaking of the

16

glass syrup bottle, and the thickness of the syrup and size of the puddle on a cold day suggested the puddle took a "substantial period of time" to form. (*Id*. at p. 608.)[8]

Here, the evidence "is insufficient to support an inference that the defendant proprietor failed to exercise the care required." (*Girvetz v. Boys' Market, Inc.*, *supra*, 91 Cal.App.2d at p. 831.) In reaching this conclusion, we are mindful that proximate cause entails considerations of public policy and fairness (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 316, citing *Mosley v. Arden Farms Co.* (1945) 26

---

[8] As it did in the trial court, Superior cites to federal district court decisions for the proposition that in California, "nothing less than thirty minutes between the last inspection and a plaintiff's fall has been held to raise a genuine dispute of material fact or sufficient to uphold a plaintiff's verdict." (*Alacan v. Target Corporation* (C.D.Cal. June 26, 2015, No. CV 14-04564-AB) 2015 U.S. Dist. LEXIS 178484 at p. *10 [citing *Ortega*, *supra*, 26 Cal.4th at p. 1204 and *Zipusch v. LA Workout, Inc.*, *supra*, 155 Cal.App.4th at p. 1285]; see *Eidem v. Target Corp.*, *supra*, 2011 U.S. Dist. LEXIS 95544 at pp. *25-*26 [same]; see also *Cardoza v. Target Corp.* (C.D.Cal. June 22, 2018, No. CV 17-2232-MWF) 2018 U.S. Dist. LEXIS 117106 at p. *8 ["As a general proposition, California courts apply a 30-minute threshold for submitting questions of actual notice to a jury—*i.e.*, if there is undisputed evidence that an active inspection of the relevant area occurred less than 30 minutes before the accident, summary judgment in favor of the store owner is appropriate; if not, the question should be resolved by a jury"].) Our review of published California opinions underscores that there is no specific time period cut off, and that the reasonableness of a store's inspection(s) must be determined in light of the circumstances of each case. (See, e.g., *Louie v. Hagstrom's Food Stores, Inc.*, *supra*, 81 Cal.App.2d at pp. 608-609.)

Cal.2d 213, 221 (conc. opn. of Traynor, J.)) and further that a proprietor is not the insurer of the safety of its patrons (*Ortega*, *supra*, 26 Cal.4th at p. 1205).

Superior satisfied its initial summary judgment burden of presenting evidence demonstrating reasonable efforts to keep the store reasonably safe for its patrons. It adduced evidence of established procedures for refrigerated unit repair; that no request for repair had been made prior to the incident; that, consistent with inspection procedures, a porter inspected the area in which the meat display was located approximately 21 to 22 minutes prior to the incident; that the inspection was recorded in the Sweep Report, which was electronically generated and could not be modified thereafter; and that the porter did not observe any water on the floor at that time. There also were no tracks or footprints visible near the puddle, indicating no one else had stepped in the water yet.

Torres does not offer any admissible evidence to dispute these facts. Although she cites the proposition that "[c]onstructive notice can be demonstrated by showing the site of the dangerous condition had not been inspected within a reasonable time," Torres does not argue an inspection 21 to 22 minutes prior to the incident was unreasonable. Instead, she argues "[a] jury can infer that the condition was long standing, pervasive and dangerous. A jury can infer that something was amiss with their inspection system and that the sweep that allegedly occurred 22 minutes before the fall never happened, was fudged or was done improperly." She also asks: "Did the porter not actually inspect that area? Did the porter not see it? Did the porter enter a faulty time on the sweep sheet? How could water of that magnitude have gathered in just 22 minutes?"

18

Questioning the credibility of Superior's evidence (i.e., whether the sweep actually happened as described) is not sufficient to raise a triable issue of fact. (§ 437c, subd. (e) ["summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment"]; *Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 496.) Without any evidence to support these rhetorical questions, they are speculation that fail to create a triable factual issue. (See *Horn v. Cushman & Wakefield Western, Inc.*, *supra*, 72 Cal.App.4th at p. 807.)

Torres also does not offer any evidence that a more frequent inspection or additional procedures were warranted under the circumstances. Unlike *Louie v. Hagstrom's Food Stores, Inc.*, *supra*, 81 Cal.App.2d 601, where the evidence of an inspection 15 to 25 minutes was insufficient to support a judgment in the defendant's favor, there is no evidence here that Superior or its employees ignored factors that would have given notice to them of the dangerous condition, such as an "appreciable noise" caused by the breaking of the syrup bottle. The "magnitude" of the puddle also does not give rise to an inference that Superior should have discovered the puddle. Although the evidence establishes that the puddle was "large" and that the water "soaked" Torres's clothes, common experience tells us the viscosity of water is low and may spread easily and quickly. Furthermore, it can be difficult to see. Indeed, as Torres testified, she did not see any cart tracks or footprints in the water. Accordingly, Torres did not present any evidence to create a triable issue of material fact that Superior's procedures for maintaining a reasonably safe premises were insufficient.

## DISPOSITION

The trial court's judgment is affirmed.  Superior is awarded its costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.